## ALEXANDER E. GUILD, JR.

*v.*

## THE CITY OF CHICAGO.

1. STATUTE—*of the title of an act.* Where the title of an act is " An act to provide for the incorporation of cities and villages," anything legitimately appertaining to the incorporation of cities and villages is germane to the subject expressed in the title, and a provision in the act that applies to cities and towns already incorporated, as well as those to become incorporated

82    472
f188  ⁷410
e188  ⁵411
e188   412
e188  ⁵413

under the act, although, as to towns already incorporated, it may only have the effect of an amendment to their charters, is, nevertheless, germane to the subject expressed in the title, and is not unconstitutional.

2. CONSTITUTION—*construction of section 22 of article 4.* Section 22 of article 4 of the constitution, was not designed to repeal or change charters of cities, towns and villages in force at the adoption of the constitution, but merely to provide that no city, town or village should thereafter become incorporated or have its charter changed or amended, except by virtue of a general law; and all that is practicable or could have been intended, was, that the legislature should, by a general law, provide for the incorporation of cities, towns and villages, or the change or amendment of their charters, leaving it to those interested to bring themselves within its operation.

3. LEGISLATIVE AUTHORITY—*delegation.* The fact that a law depends upon a future event or contingency for its taking effect, and that contingency may arise from the voluntary act of others, does not render it liable to the objection that it is a delegation of legislative authority to them upon whose acts the taking effect of the law depends.

4. TOWNS AND CITIES—*amendment of charters must be under general law.* Amendments of the charters of cities, towns and villages must be by general law, which must apply alike to all cities, towns and villages desiring to amend their charters in that particular respect, so that one city, town or village may not amend its charter by adopting one provision, and another city, town or village amend its charter by adopting another and different law on the same subject. Whether the amendment to be adopted shall extend to a single or many subjects, is not within the regulation of the constitution. Its mandate is observed where the amendment, whether extensive or limited, is by general law.

5. SPECIAL ASSESSMENTS—*construction of statute in relation to, by cities.* Although it would seem that sec. 1, of article 9, of the act to provide for the incorporation of cities and villages, in force April 10, 1872, limits the power of the corporate authorities to make local improvements by special assessments or by special taxation to contiguous property only, yet, taking the whole article together, it is broad enough to authorize the making of special assessments upon property specially benefited without regard to its being contiguous.

6. SAME—*constitutional provision concerning.* The words "special assessment," as used in section 9 of article 9 of the constitution, mean an assessment upon property specially benefited, without regard to whether it is contiguous or not, and the words "contiguous property," as used in that section, do not apply to special assessments, but apply to special taxation only.

7. CITIES—*adopting provisions of a general law in regard to, governed by any amendment made to such law.* Where a city, under the provisions of a general law for the incorporation of cities, adopts such general law, it does

so subject to the power of the legislature to repeal or amend the same; and whenever the city takes any steps or institutes any proceedings under such law, after it has been amended, it will be regulated and governed therein by the law as amended, and not by the law as it was when adopted by the city

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. E. P. WEBER, for the appellant.

Mr. FRANCIS ADAMS, for the appellee.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from an order of confirmation by the Superior Court of Cook county, of a special assessment, which had been made by commissioners for the public improvement of opening and extending Dearborn street, in the city of Chicago, from Jackson street to Fourteenth street.

The assessment proceedings were had under the provisions of article 9 of an act of the General Assembly of this State, entitled " An act to provide for the incorporation of cities and villages," approved April 10, 1872. Laws 1871–2, p. 218.

Section 54, of said article 9, provides, that " any city or incorporated town or village may, if it shall so determine by ordinance, adopt the provisions of this article without adopting the whole of this act; and where it shall have so adopted this article, it shall have the right to take all proceedings in this article provided for, and have the benefit of all the provisions hereof." The common council of the city of Chicago adopted this article by ordinance, passed September 2, 1872.

The first objection taken to this assessment is, that the ordinance of adoption of this article is null and void, for the reason that said section 54, which provides for such adoption of the article, is unconstitutional, because—

1. The subject of that section is not expressed in the title of the act, and so the section is in violation of that provision of the constitution, that " no act hereafter passed shall embrace

more than one subject, and that shall be expressed in the title."

The argument is, that the title of the act is for the incorporation of cities and villages—the organization of municipalities—but that section 54 does not respect the organization of any municipality, but the amendment only of existing charters, which is a different subject. The act provides not only that existing cities and incorporated towns may adopt this 9th article of the act, but that they may become incorporated under the act. The argument employed would lead to the extent that the whole act is unconstitutional, so far as it relates to existing cities and incorporated towns, it being in effect amendatory of prior laws applicable to them, inasmuch as it makes a change in respect of such laws, if adopted. By the adoption of the entire act, any existing city or incorporated town would become incorporated under the act, to the extent of the whole act. By the adoption of the 9th article alone, it might be regarded as incorporating to that extent under the act. Anything legitimately appertaining to the incorporation of cities and villages we regard as germane to the subject expressed in the title, and that this section does pertain to such purpose. See *The People* v. *Wright*, 70 Ill. 388.

2. Again, said section 54 is claimed to be unconstitutional, for the reason that the legislature therein delegate the power of legislation to cities, towns and villages, which, by the constitution, the legislature alone can exercise.

This objection, and the further one, that the section is within the prohibition of section 22 of article 4 of the constitution, that the General Assembly shall not pass local or special laws incorporating cities, towns or villages, or changing or amending the charter of any town, city or village, may be considered together.

We have said, in *The People ex rel.* v. *Cooper*, 83 Ill. 585, that it was not designed by this provision to repeal or change charters of cities, towns or villages, in force at the adoption of the constitution, but merely that no city, town or village should thereafter become incorporated or have its charter

changed or amended except by virtue of a general law. It would be absurd to suppose that it was intended that, when the general law was enacted, it should bring into being all the corporations that could ever be organized under it, or that every time a necessity should subsequently exist for the incorporation of a city, town or village, a general law should be enacted by the General Assembly for that purpose. All that is practicable, or could have been intended, was that the legislature should, by a general law, provide for the incorporation of cities, towns and villages, or the change or amendment of their charters, leaving it to those interested to bring them within its operation, and this has never, in this State, been held to be a delegation of legislative authority. *The People* v. *Reynolds,* 5 Gilm. 12; *The People* v. *Salomon,* 51 Ill. 37. These cases holding that a law may depend upon a future event or contingency for its taking effect, and that contingency may arise from the voluntary act of others.

This section of the constitution relates to two classes of cases: first, to cities, towns and villages thereafter to be incorporated; second, to those thereafter to have their charters changed or amended—and thus contemplates the probable continuance, for some time, of the existing want of uniformity in such charters, but intending that all future legislation in respect to such charters should be with a view of producing, ultimately, uniformity, so far as that would result from the law being general. But no obligation is imposed as to the extent that amendments to existing charters shall be adopted. It is only required that the amendment shall be by a general law, which, of course, must apply alike to all cities, towns, etc., incorporated under the general law, and to all desiring to amend their charters in that particular respect; so that one city, town, etc., may not amend its charter by adopting one provision, and another city, town, etc., amend its charter by adopting another and different law on the same subject. Whether the amendment to be adopted shall extend to a single or many subjects, is not within the regulation of the constitution. Its mandate is

observed when the amendment, whether extensive or limited, is by a general law.

It is objected that the ordinance providing for this improvement is void, as it provides for the exercise of the taxing power in another and different manner from that prescribed by law.

Section 9 of article 9 of the constitution provides: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements, by special assessment or by special taxation of contiguous property or otherwise."

Section 1 of article 9 of the act in question provides: "That the corporate authorities of cities and villages are hereby vested with power to make local improvements, by special assessment or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall, by ordinance, prescribe." The ordinance directing the improvement provides: That said improvement shall be made, and the cost thereof paid by special assessment, to be levied upon the property benefited thereby, to the amount that the same may be legally assessed therefor, and the remainder of such cost to be paid by general taxation. The point of the objection is, that the law conferring the power to make local improvements by special assessment, limits its exercise to contiguous property, and that the ordinance entirely disregards this limitation. Looking only to the section quoted, there would appear to be foundation for the objection; but there are other portions of this article 9, especially those sections prescribing the proceedings for the making of special assessments, which contemplate that the assessment is to be made upon such property as may be specially benefited, without regard to whether it be contiguous property or not. Without citing particularly the various provisions to be found in other sections of this article 9 which so indicate, we can have no doubt that, taking the whole of the article together, it contemplates the making of the special assessments upon the property benefited, whether contiguous or not, and that it is broad enough in its scope to authorize

the making of special assessments upon property that may be specially benefited, without regard to its being contiguous; and we think the authority given by the law, in this particular, should be taken to be such as may be warranted by the constitution and will harmonize therewith in this regard. The inquiry, then, is to be as to the construction of the constitutional provision giving the power " to make local improvements by special assessment or by special taxation." Do the words " contiguous property" apply only to special taxation, or to special assessment as well, so that both special assessments and special taxation are to be of contiguous property, or is it only special taxation which is to be of contiguous property, leaving improvements to be made by special assessment simply, without confinement to contiguous property? The language itself, perhaps, may admit of either interpretation. The words " special assessment " had a received and well-defined meaning, under the decisions of this court prior to the adoption of the constitution, as assessments upon all property specially benefited by the improvement, not more than the special benefits conferred, without limitation to contiguous property. There is no sufficient indication that the words were intended to be used in the constitution in any different sense. Allowing to them their former meaning, it is an established one. Admitting the limitation to contiguous property, a field of uncertainty of construction is opened, with liability to have arise, in almost any case of special assessment coming up, a question of dispute in regard to what is or is not contiguous property.

A majority of the court think the better interpretation to be that the words " special assessment," in this constitutional provision were used in the sense as had previously been defined by this court, an assessment on property specially benefited, without regard to whether it was contiguous or not, and that the words "contiguous property," in the provision, do not apply to special assessment, but apply to special taxation only.

They do not find, then, the objection to be well taken, that the ordinance is invalid, as being unauthorized by law in

directing the special assessment to be made upon property specially benefited, without limitation to contiguous property.

A point is made that the constitution does not confer the power to authorize local improvements to be made by " general taxation," and that the ordinance for the improvement, in so far as it provides that any part of the cost shall be paid by general taxation, is void. Were that even so, we fail to see the force of the objection as bearing upon the question here involved, which is not one respecting the imposition of any general tax, but a special assessment solely, and the point is dismissed without further notice.

It is further objected, that the assessment roll, as returned by the commissioners making the assessment, is defective, in the respect that there is no map accompanying the same, as by law required.

Section 25 of article 9 of the act, as originally passed, did require the commissioners to make a map showing the lots to be benefited by the improvement, and to mark on each lot shown in the map the amount assessed against it. Laws 1871–2, p. 251. This section was repealed by an act approved April 25, 1873, in force July 1, 1873. Laws 1873, p. 66. Section 26 of article 9, which, as originally passed, required the commissioners to certify the map, with the assessment roll, to the court, was amended by an act which took effect March 30, 1874, and by the section, as amended, no map is necessary to accompany the roll. Rev. Stat. 1874, sec. 140. The assessment in question was made in 1875. The title of the repealing act of 1873 is, "An act to repeal section 25, and to amend sections 27 and 28 of an act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872."

The position taken is, that this repeal and amendment do not change the law as respects the city of Chicago; that upon the adoption by the common council of the city of Chicago of article 9 of the act, that article, as respects the city of Chicago, ceased to be article 9 of an act entitled "An act to provide for the incorporation of cities and villages," but be-

480        GUILD, JR. *v.* CITY OF CHICAGO.        [Sept. T.

Opinion of the Court.

came, from that time forth, a part of, and one of, the provisions in the city charter of the city of Chicago; that the repealing act is limited to the general law, as it does not profess to extend to any city charter where the city had adopted and made article 9 a part of its charter; and that, upon the familiar principles applicable to general and particular statutes, the repeal can not be held to extend to any such city charter. The same. argument would apply to the case of a city which had become incorporated under, and adopted the whole of, the act; and according thereto no amendment, simply, of the act, or repeal of any of its provisions, would apply to such city, unless it were included by express reference.

We know of no good ground upon which to rest for support such a position. By the process of adoption by a city of this article of the act, the article is not taken out of the act, and no longer a part thereof, and incorporated into, and made a component part of, a different law, to-wit: the city charter. The act still remains operative in all its parts in respect to all cities and villages in the State. Any unqualified amendment of the article, or repeal of any of its provisions, affects the article in its application universally to all the cities and villages in the State, irrespective of the circumstance of its having or not been previously adopted by any city or village. The only effect, in this wise, of any such adoption of the article, is, to make it operative in a city or village where it was not operative before.

The heading and subject matter of this article 9 is, "Special assessments for local improvements." In the making whereof, since the adoption of this article, the city of Chicago, for its authority and guide of action, looks to article 9 of "An act to provide for the incorporation of cities and villages," and not to its city charter, as a distinct thing therefrom; and it is governed by article 9, not as it was at the time of its adoption by the city, but as it is at the time when action comes to be taken thereunder.

At the time of the making of the assessment in question, the commissioners, for information as to their duty, had recur-

rence to article 9 of this act of the General Assembly. They found there no provision requiring a map to be made or returned with the assessment roll. True, there was such a provision therein at the time of its adoption by the city, but it had since been repealed, and the article contained no such provision at the time when the commissioners acted, and they were not required to make or return a map with the assessment roll. The effect of the construction contended for would be to thwart the purpose of the act in securing uniformity in the charters of cities and villages, as every change in the law, by the legislature, would operate to produce differences in such charters.

It is claimed that the ordinance directing this improvement was void, for the reason that the board of public works of the city of Chicago had never made a report recommending or disapproving the work, with a statement of the expense thereof, as formerly required by the charter of the city. According to section 20 of article 9, the city council are required to appoint three of its members, or any other three competent persons, to estimate and report the cost of the improvement contemplated.

Whether or not the city council might have pursued, in this respect, the former provision of the city charter, we can have no doubt there was a right here to proceed under article 9, and there was no more required than to follow the mode there prescribed. The report of the board of public works was not necessary—it was not required under any of the provisions of article 9.

It is objected that there is no proof showing that the common council ever passed any ordinance directing this improvement. The court excluded the ordinance when it was offered in evidence before the jury, and rightly. It was not competent evidence to go to the jury, under the issues. The only issues to be determined by the jury were, whether the property of the appellant was assessed more or less than it was benefited, or more or less than its proportionate share of the cost

of the improvement, and the amount for which it ought to be assessed.   Section 31, article 9.

The same remarks are applicable to the exclusion of the report of the board of public works as evidence before the jury.   The ground of its exclusion by the court was, "that the report was already before the court and jury as pleadings." Any question arising upon the report, as well as the ordinance, was one for the court.   The transcript of the record does not contain the original petition in the condemnation proceeding, nor the supplemental petition in the assessment proceeding, nor does it purport to be a complete copy of the record.

A certified copy of the ordinance must have been a part of the original petition for condemnation; section 5 of article 9 requiring that the petition shall contain the same.   This assessment was in that *same proceeding*.   Section 53, article 9. The supplemental petition for the assessment is required to recite the ordinance for the improvement and the report of the commissioners as to its cost.   Section 22, article 9.

Appellant, in the court below, recognized and treated the ordinance as a part of the record.   Before the impanneling of the jury, he moved to dismiss the proceedings, because the ordinance providing for the improvement was illegal and void, and the same reason was made one of the grounds of his motion in arrest of judgment.   The objection is without merit.

It is insisted that the court below erred in not awarding appellant a separate trial.   The language of section 34, article 9, taken in connection with prior sections relative to the proceedings on application for judgment, would seem to show that a single hearing and a single judgment, several in effect, was contemplated by the law.

We think, at most, that the allowing or not of a separate trial was but a matter of discretion with the court below, and there is no ground to think the discretion of the court was improperly exercised.

It is assigned as error that the witness Benze, one of the commissioners who made the assessment, was not permitted to answer the questions whether, in the assessments of prop-

erty along the line of Dearborn street, he had established some scale increasing and decreasing as he went toward or from the contemplated improvement, and how, in assessing the north and south half of appellant's lot, he arrived at a difference of one dollar and twelve cents.

Appellant's counsel state that they rest the propriety of these questions upon the decisions of this court, in *City of Chicago* v. *Larned*, 34 Ill. 203, and *Creote* v. *City of Chicago*, 56 id. 428, where, in the former case, it is held that an assessment not in proportion to benefits, but in proportion to frontage, is unconstitutional; and in the latter, that evidence offered to show that the cost of an improvement was assessed in proportion to frontage, was competent. The application of the cases is not perceived. The questions asked here were not whether the assessment was made in proportion to frontage. Those decisions were under a different law. Section 24, article 9, prescribes the basis upon which assessments shall be made, which conforms to the decisions of this court as to what is the right basis.

Even if the commissioners, in making their assessment, proceeded upon a wrong basis, their assessment was not controlling. Section 31, article 9, provides that, on the hearing, either party may introduce such other evidence as may tend to establish the right of the matter.

The question upon the hearing was, whether appellant's land had been assessed more than it was benefited, or more than its proportionate share, and it was gone into at large by the evidence of quite a number of witnesses on both sides introduced before the jury. There is no ground for the objection.

We find no error in the record, and the judgment is affirmed.

*Judgment affirmed.*


Mr. JUSTICE DICKEY: I do not concur in the suggestion that ultimate uniformity in charters of existing cities, was one of the objects of the constitution.