PATRICK FITZPATRICK *et al. v.* THE CITY OF JOLIET,

and

THE FIRST UNIVERSALIST CHURCH *v.* SAME.

1. WRIT OF ERROR *to county court.* In March, 1874, there was no statute authorizing an appeal from the county to the circuit court in a proceeding to condemn property for a sewer, and therefor a writ of error lies from this court to the county court.

2. SAME—*statute construed.* Section 8, of the act of 1872, to increase the jurisdiction of county courts, has no reference to cases to condemn property for a public improvement by a city, but only to cases in which, by section 1, increased jurisdiction is given to county courts, as, in cases wherein justices of the peace have jurisdiction, and the amount claimed does not exceed $500.

3. JURY—*mode of selecting.* On a proceeding to condemn lots for a public improvement, all the objections are properly submitted to one jury, each objector having a separate right of challenge, and if, after having exercised his right, new jurymen are introduced into the panel by challenges from others or by the petitioner, he will have the right to challenge again if he has not before exhausted his rights.

WRIT OF ERROR to the County Court of Will county; the Hon. DAVID WILLARD, Judge, presiding.

These were proceedings by the city of Joliet to condemn land for a sewer. The cases were tried and judgments rendered in March, 1874, and brought to this court by appeal. The appeals were dismissed and the causes brought here again, by writ of error.

The cases are alike. They were considered at the September term, 1876, and it was then ordered in each case that

the judgment be reversed. The views of the court were expressed in an opinion then filed, as follows:

"This was a writ of error to the county court of Will county, from a special assessment of the benefits to be sustained by certain property holders, by reason of the laying of a sewer along one of the streets of the city of Joliet.

"Motion is made to quash the writ of error, upon the ground that it was issued without authority of law; and in support of the motion it is insisted that an appeal lies in such cases from the county court to the circuit court, under the act in relation to cities and villages, in force July 1, 1872, (under which these proceedings were had,) and therefore a writ of error does not lie from this court.

"We have been unable to find any section of the statute, in force at the time the judgment was rendered, which authorized an appeal to the circuit court. Counsel cite sec. 35, art. 9, of the act in relation to cities and villages, (2 Gross, p. 94,) which provides that the judgment of the court shall have the effect of a several judgment, and that any appeal from such judgment or writ of error shall not invalidate or delay the judgment, etc. This, undoubtedly, indicates that those who framed the act, contemplated that there would be appeals from such judgments or writs of error thereon prosecuted, but it does not purport to be a grant of such right, and an appeal could only be prosecuted pursuant to the provisions of some act expressly conferring the right, and prescribing the terms and conditions upon which it should be exercised. We think it quite clear that sec. 3, of the act to increase the jurisdiction of county courts, in force July 1, 1872, (2 Gross, p. 116,) has no reference whatever to cases like the present. That section has reference only to the cases in which, by sec. 1, increased jurisdiction is given to county courts, namely: in that class of cases wherein justices of the peace have jurisdiction, and the amount claimed or the value of the property does not exceed $500; appeals from justices of the peace and police magistrates; and criminal cases and cases of misdemeanor, where

the punishment is not death or confinement in the penitentiary. To hold that the section went beyond these, would do violence to the language of the section and contravene the elementary principles of construction.

" Nor do we think the general Revenue law of 1872 authorizes an appeal from the county to the circuit court in this class of cases. Counsel refer us to sec. 44 of the act in relation to cities and villages, (2 Gross, p. 95,) and sec. 192 of the general Revenue law of 1872, (2 Gross, p. 364.)

" The first mentioned section provides: 'That the general revenue laws of this State, in reference to proceedings to recover judgments for delinquent taxes, the sale of property thereon, the execution of the certificates of sale and deeds thereon, the force and effect of such sales, and deeds and all other laws in relation to the enforcement and collection of taxes and redemption from tax sales, except as herein otherwise provided, shall be applicable to proceedings *to collect such special assessments.'*

" But this is not a proceeding *to collect* a special assessment. It is a proceeding *for condemnation,* and, although preliminary to a proceeding to collect, it is governed by different sections of the law, and the judgment to be rendered is distinct and independent of the judgment to be rendered to recover the amount of the assessment when it has become delinquent. It, therefore, follows, that sec. 192, relating, as it does, only to the final judgment for the recovery of *the delinquent assessment,* can have no application to the question. There being, when the judgment was rendered, no appeal authorized to the circuit court, the writ of error was properly issued, and the motion can not prevail. *Peake* v. *The People,* 76 Ill. 290; *Unknown Heirs of Langworthy* v. *Baker,* 23 id. 487.

" We deem it necessary to notice but a single point made by the plaintiffs in error, as that, in our opinion, is fatal to the judgment. It is thus stated by the counsel:

" 'On the hearing of the objections, the different objectors appeared, by their respective attorneys—in all some eight or

ten different attorneys or firms, each representing different objectors. Whereupon, the court ordered a jury, and required all the objectors to join and try their several objections by the same jury, all at one time and as one cause. In impaneling the jury, the attorneys for the city passed upon the twelve first; then an attorney, representing one set of objectors, passed upon them, excusing some half dozen, whose places were supplied by others, and the panel accepted by him. The twelve were then turned over to another attorney, representing another set of objectors, who passed upon them, excusing some, and, others being called to supply their places, he finally fixes up the panel to suit his clients, accepts them, and turns them over to another attorney representing other objectors, who goes through the same process and turns the twelve over to the next, and so they were passed along from one attorney to another, not less than six or eight times, the panel being changed each time. The last twelve were then, under the direction of the court, passed upon and accepted by the city attorney. The attorneys who had passed upon the panel, then claimed the right to pass upon those who had been introduced into it after the panel had been accepted by them; this was refused by the court.'

" We are of the opinion the court properly submitted the questions to be determined, to a single jury. The seventh section of the act under which the proceedings were had, (2 Gross, p. 90,) provides, that upon the return of summons, etc., 'the court shall proceed to a hearing of such petition, and shall impanel a jury to ascertain the just compensation *to be paid to all of such owners and occupants* aforesaid.' And by the thirty-fourth section it is provided, the judgment shall have the effect of a several judgment *as to each tract or parcel of land* assessed, and there is no authority for the impaneling of a separate jury at the instance of each property owner.

" The case, then, as to the mode to be pursued in selecting the jury, is like a case where there are several defendants in a criminal prosecution tried jointly. In such cases each defendant has a right to an equal number of challenges, which he

may, if he shall think proper, fully exhaust, as well as the benefit of the challenges of his co-defendant. But 'the right of peremptory challenge is to exclude jurors, not to select them. It enables a prisoner to say who shall not try him, but not to select the particular jurors by whom he will be tried,' and he can not, therefore, except to the challenges made by his co-defendant. *Morton* v. *The People,* 15 Ill. 53; 1 Bishop's Crim. Procedure, secs. 967, 969, 976; 3 Wharton's Crim. Law (7th ed.), sec. 3136.

"Thus far, in the ruling of the court below, we perceive nothing objectionable. But the defendant in error held the affirmative, and was, very properly, in the first instance, required to pass on the jury first, and this should have been required as often as new jurymen were placed in the box to take the place of others who had been excused, leaving the plaintiffs in error an opportunity to object as often as new jurors were presented, so long as their rights of peremptory challenge were not exhausted. The panel finally accepted by the defendant in error being an entirely different panel from that accepted by the plaintiffs in error first passing upon the jury, gave him the undoubted right to exercise a peremptory challenge to any objectionable jurymen, unless he had previously exhausted the number of challenges to which he was entitled. The object in allowing the right to challenge peremptorily, is to enable parties to relieve the entire jury, so far as it may be possible by the number of challenges allowed, of objectionable jurymen; and the court is not authorized to abridge this right to a part of the jury. It has been held in some States, that the right of peremptory challenge may be exercised at any time before the jury are sworn, while in others it is held, that jurymen once deliberately accepted can not be subsequently challenged, unless it be shown the party labored under some misapprehension in accepting them; but in no case, so far as we are informed, has it been held that a party, not having exhausted his challenges, waives his right to challenge jurors not yet called into the panel, by accepting

jurors already there, but who are afterwards rejected by the challenges of other parties. When the panel, as accepted, is broken, by the rejection of any of the jurors thereon, and their places are filled by new jurors, it becomes, to all intents and purposes, a new panel, in regard to which the first objector is entitled again to exercise the right of peremptory challenge, if he should not have previously exhausted it.

"We are, therefore, of opinion, the court erred in denying to the plaintiffs in error first passing on the jury, and whose right of peremptory challenge had not been exhausted, the privilege to exercise that right in regard to the panel as finally selected and sworn."

These cases were brought before the court again on petitions for rehearing, when the following opinion was delivered.

Mr. R. E. BARBER, and Mr. F. GOODSPEED, for the plaintiffs in error.

Messrs. HOUSE, HAGAR & FLANDERS, for the defendant in error.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

We find no reason for modifying, in any manner, what was formerly said in these cases as to the questions of law discussed in the former opinion. On a closer examination of the record, we find that after the several objectors had been heard in their order, and had respectively made challenges of jurors whose places had been supplied by "talesmen," and before the panel was turned over to the city for examination, "the court asked the several objectors if they desired further to pass upon the jurors presented, and stated that if the objectors were through the jurors would be turned over to the city for examination; and the objectors *making no further objection* to said jurors, they were accepted by the city." This statement in the record shows that the selection of the jury was made substantially in conformity to the views expressed by this court as to the rules

governing that proceeding.   It thus appears, the supposed error mentioned in the former opinion was not, in fact, committed.

As to the other questions presented by the plaintiffs in error, so far as they demand consideration, they are settled against the plaintiffs in error in the case of *Guild* v. *The City of Chicago*, 82 Ill. 472, and other recent cases.

The former order of this court in these cases must be set aside, and the judgment in each of them must be affirmed.

*Judgment affirmed.*