CHARLES H. LAWRENCE *et al.*

*v.*

THE PEOPLE *ex rel.* Foote, County Collector.

*Opinion filed December 20, 1900.*

1. MUNICIPAL CORPORATIONS—*city adopting article 9 of City and Village act adopts its amendments.* A city which adopts article 9 of the City and Village act under the authority of section 54 of such article, does so subject to the power of the legislature to repeal or amend the same, and hence is authorized to proceed under amendments passed after such adoption. (*Guild* v. *City of Chicago,* 82 Ill. 472, followed; *Culver* v. *People,* 161 id. 89, and *City of Charleston* v. *Cadle,* 166 id. 487, distinguished.)

2. SPECIAL ASSESSMENTS—*that improvement is not completed is no objection to an application for sale.* That an improvement is not completed is no objection to an application for judgment of sale for a delinquent installment of a special assessment, since the property owner has a remedy by *mandamus* to compel the city to complete the improvement in accordance with the ordinance.

APPEAL from the County Court of Lake county; the Hon. D. L. JONES, Judge, presiding.

This is an appeal from a judgment of the county court of Lake county for the sale of certain lots of appellants for the third installment of a special assessment, levied by the city of Lake Forest for a connecting system of sewers in Forest park, Lake avenue, Wisconsin avenue and adjacent streets in the city of Lake Forest.

A petition was filed by the city of Lake Forest for confirmation of the assessment, in which confirmation proceeding the appellants did not appear. A judgment of confirmation was rendered against the property in question without objection in the original assessment proceeding.

Upon this application for judgment of sale for the third installment the appellants filed certain objections claiming, among other objections, that the ordinance, upon which the special assessment was based, was invalid and void.

The ordinance in question was passed July 6, 1896, and approved on the same day. Section 8 of the ordinance provides as follows: "Said improvement shall be made and the cost thereof paid for by special assessment, to be levied upon the property benefited thereby, to the amount that the same may be legally assessed therefor, and the remainder of said cost to be paid for by general taxation, in accordance with article 9 of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the incorporation of cities and villages,' approved the 10th day of April, A. D. 1872, in force July 1, A. D. 1872, and the several amendments thereto, and adopted by the said city by ordinance, duly passed and adopted on the 16th day of October, 1883, and that the amount of such special assessment shall be divided into ten installments as provided by an act of the General Assembly of the State of Illinois, entitled 'An act to authorize the division of special assessments in cities, towns and villages, into installments, and authorizing the issue of bonds to anticipate the collection of the deferred installments,' approved June 17, 1893, in force July 1, 1893. Said division into ten installments to be as nearly equal as possible, and to be made so that the first installment shall include all fractional amounts, leaving each of the remaining installments equal in amount, and multiples of $100."

Section 10 of the ordinance provides for the issue of improvement bonds payable out of the installments of the special assessment.

The ordinance, above referred to as having been passed and adopted on the 16th day of October, 1883, is as follows:

"Article 34.—*Be it enacted by the city council of the city of Lake Forest:*

"Sec. 1. That all the provisions of article 9, of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the incorporation of cities and vil-

lages,' approved April 10, 1872, in force July 1, 1872, be
and the same are hereby adopted by said city, and that
all local improvements within the limits of said city,
shall be made and paid for in accordance with the pro-
visions of said article 9.

"Sec. 2. All ordinances and parts of ordinances, in
conflict with the provisions of said article 9, are hereby
repealed."

HAMLIN & BOYDEN, for appellants.

SMOOT & EYER, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

*First*—The first objection made by the appellants to
the judgment of sale is, that the city of Lake Forest had
no authority on July 6, 1896, the time of the passage and
approval of the special assessment ordinance, to divide
a special assessment into installments.   Appellants con-
tend, that section 8 of the ordinance of July, 1896, upon
which the special assessment is based, so far as it pro-
vides for payment by installments, is illegal and void.
It is claimed, that the Installment act, in force at the
time of the passage of the ordinance, was the act of 1887
as amended by the further acts of 1891 and 1893; that the
various amendments of article 9, giving a municipality
the right to divide a special assessment into installments,
had not been adopted by the city of Lake Forest; and
that the county court, therefore, acquired no jurisdic-
tion for the purpose of the confirmation of the original
assessment.

On October 16, 1883, by ordinance passed and adopted
on that day, the city of Lake Forest adopted article 9;
at that time, and prior to the act of 1887, there was no
provision made by statute for dividing special assess-
ments into installments.   The contention of the appel-

lants is, that the city adopted article 9 as it was on October 16, 1883, and did not adopt the amendments of article 9 made after 1883. As the provisions for dividing special assessments into installments were embodied in these amendments, and as it is alleged that the amendments were never adopted by the city, it is, therefore, argued that that part of the ordinance, which provides for the division of the assessment into installments, is void.

Section 54 of article 9 of the City and Village act provides as follows: "Any city or incorporated town or village may, if it shall so determine by ordinance, adopt the provisions of this article without adopting the whole of this act; and where it shall have so adopted this article, it shall have the right to take all proceedings in this article provided for, and have the benefit of all the provisions hereof." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 781).

The question, then, is whether or not, when the city of Lake Forest on October 16, 1883, adopted the provisions of said article 9, it merely adopted those provisions as they were at that date, or whether it was subject to the amendments thereafter made to article 9 without the passage of a new general ordinance adopting such amendments. In other words, did the amendments to article 9, made after October 16, 1883, apply to the charter of the city of Lake Forest, and authorize it to provide for the division of special assessments into installments?

This question would appear to have been decided by this court in the case of *Guild* v. *City of Chicago*, 82 Ill. 472. In that case we held that, where a city under the provisions of a general law for the incorporation of cities, adopts such general law, it does so subject to the power of the legislature to repeal or amend the same; and whenever the city takes any steps, or institutes any proceeding under that law after it has been amended, it will be regulated and governed therein by the law as amended, and not by the law as it was when adopted by the city. We there said (p. 480): "By the process of adoption by

a city of this article of the act [article 9], the article is not taken out of the act, and no longer a part thereof, and incorporated into and made a component part of, a different law, to-wit: the city charter.   The act still remains operative in all its parts in respect to all cities and villages in the State.   Any unqualified amendment of the article, or repeal of any of its provisions, affects the article in its application universally to all the cities and villages in the State, irrespective of the circumstance of its having or not been previously adopted by any city or village.   The only effect, in this wise, of any such adoption of the article, is to make it operative in a city or village where it was not operative before. ˙ * * *   Since the adoption of this article, the city of Chicago, for its authority and guide of action, looks to article 9 of 'An act to provide for the incorporation of cities and villages,' and not to its city charter, as a distinct thing therefrom; and it is governed by article 9, not as it was at the time of its adoption by the city, but as it is at the time when action comes to be taken thereunder."

It is, however, contended by the appellants, that this court laid down a different doctrine from that announced in *Guild* v. *City of Chicago, supra,* in the following cases, to-wit:   *Culver* v. *People,* 161 Ill. 89, *City of Charleston* v. *Cadle,* 166 id. 487, *City of Charleston* v. *Johnston,* 170 id. 336, and *Andrews* v. *People,* 173 id. 123.   We do not, however, regard the doctrine of the latter cases as being inconsistent with the doctrine of the case of *Guild* v. *City of Chicago, supra.*

In *Culver* v. *People, supra,* the question was as to the construction of a statute passed on May 2, 1873, which gave the power to the West Park Commissioners of Chicago to make improvements by special assessment; and the act, conferring this power, was an independent act. So, also, in the cases of *City of Charleston* v. *Cadle, supra, City of Charleston* v. *Johnston, supra,* and *Andrews* v. *People, supra,* the city was levying a special assessment for the

construction of drains and ditches pursuant to the act of June 22, 1885, which was an independent act of the legislature. The general rule announced in these cases is, "that an act, which adopts by reference the whole or a portion of another statute * * * does not include subsequent additions or modifications of the statute so adopted, unless it does so by express or strongly implied intent." (*Culver* v. *People, supra*). The question there was as to the intention of the legislature, when the act of May 2, 1873, in regard to parks and boulevards mentioned in the *Culver case*, and the act of June 22, 1885, in regard to drains and ditches mentioned in the other cases, were passed. It was there held, that the legislature intended that park boards should follow article 9 as it existed in 1873, and not as it might be changed by subsequent amendments and repeals made in 1887, 1891 and 1893, and that it was the intention of the legislature in regard to the act of 1885 not to include future amendments to article 9.

It was held, however, in *Guild* v. *City of Chicago, supra*, that it was the intention of the legislature by section 54 of article 9 of the City and Village act to provide, that an adoption of article 9 meant an adoption for all time and for all future changes. One evidence of the intention of the legislature to make the adoption of article 9 in accordance with section 54 subject to future amendments of the article is the necessity of having uniformity in the operation of the law, as applied to cities and villages proceeding according to article 9. Upon this subject we said in *Guild* v. *City of Chicago, supra:* "The effect of the construction contended for would be to thwart the purpose of the act in securing uniformity in the charters of cities and villages, as every change in the law by the legislature would operate to produce differences in such charters." Moreover, the legislature has absolute control over the municipalities which it creates, and may modify, amend or abrogate their charters by a general law.

There is a marked distinction between the adoption of article 9 by a city through the passage of a municipal ordinance for that purpose, and the statutes involved in the *Culver*, *Charleston* and *Andrews cases*. In the former case, the city council acts for itself, but in the latter cases the municipality or park board had no choice, as the legislature fixed the matter for them. The case of *Guild* v. *City of Chicago*, *supra*, decided that article 9, when once adopted, was for all time the law of the city concerning special assessments including all future modifications by way of amendment or repeal, and that the act, as it was at the time of its adoption, was not for all time the law of the city concerning special assessments. But, in the other cases referred to, the court determined that, inasmuch as in the two acts concerning the making of special assessments by park boards and the constructing of ditches and drains by special assessment, the legislature embodied no language which would show an intention to adopt future amendments to article 9, such amendments were not included.

Section 8 of the ordinance of July 6, 1896, upon which the present assessment is based, itself declares that the city of Lake Forest by the ordinance of October 16, 1883, adopted article 9 with the "several amendments thereto." Section 8 orders the assessment to be divided into installments in accordance with article 9, and the several amendments thereto, and as provided in the act of June 17, 1893. The language of section 8 amounts in fact to an adoption of all the provisions of article 9, including the amendments thereto as embodied in the Installment act of June 17, 1893. Section 8 is a recognition of the existence of these amendments, and shows a deliberate and formal purpose to have the proceedings made in accordance therewith.

The interpretation of a prior act, or the intention thereof, may be ascertained by the language of subsequent acts of the same law-making body. In *United States*

v. *Freeman*, 3 How. 556, it is said: "If it can be gathered from a subsequent statute *in pari materia* what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute." (*Cannon* v. *Vaughn*, 12 Tex. 399; 23 Am. & Eng. Ency. of Law, p. 315; Endlich on Interpretation of Statutes, secs. 43, 44, 47; *Matter of Yick Wo*, 68 Cal. 294).

We are, therefore, of the opinion that the ordinance was not void for the reason set up in the first objection made thereto by the appellants.

*Second*—The improvement involved in this case was a connected system of sewers to be built in a number of avenues and streets. When appellants filed their objections in the county court, two short spurs or laterals of this sewer had not been built upon Elm and Wenona avenues, although the sewer had been built in front of the property of the appellants. The second objection, urged by the appellants, is that the city had not finished all the work ordained in the ordinance.

The collection of a special assessment cannot be enjoined, nor will objections to the application for judgment by the county collector be sustained, upon the ground that a part of the work has not been done. Individual property owners cannot be allowed to defeat the collection of a special assessment upon the ground that the city has not, at the time of the application for judgment, performed the work, or has omitted to perform some portion of it. To sustain an objection of this kind would operate to render impracticable the construction of local improvements by special assessment. The law in such cases does not leave the property owner remediless. The writ of *mandamus* may be invoked to compel the city to complete the improvement in compliance with the ordinance. (*Church* v. *People*, 174 Ill. 366; *Fisher* v. *People*, 157 id. 85; *People* v. *Green*, 158 id. 594; *Callister* v. *Kochersperger*, 168 id. 334; *Craft* v. *Kochersperger*, 173 id. 617;

*Connecticut Mutual Life Ins. Co.* v. *People,* 172 id. 31; *Ryder Estate* v. *City of Alton,* 175 id. 94).

We are of opinion that the second objection urged by appellants to the entry of the judgment below is without force, and was properly overruled by the county court.

Accordingly the judgment of the county court is affirmed.                                *Judgment affirmed.*