### NICHOLS et al. v. LEVY.

No. 22173. Opinion Filed May 26, 1931.

Rehearing Denied July 28, 1931.

Shirk, Danner & Phelps, Chas. E. Earnheart, and Samuel O. Neff, for plaintiffs.

Lewis Morris, Co. Atty., B. C. Logsdon, Asst. Co. Atty., Clay M. Roper, and Willingham & Fariss, for defendant.

ANDREWS, J. This is an original proceeding in this court for a writ of prohibition against the defendant to prohibit him from acting as county judge of Oklahoma county. It is alleged and admitted that the defendant is attempting to act as county judge of Oklahoma county under the authority of House Bill No. 131 of the Thirteenth Legislature. The defendant contends that when section 11, art. 7, of the Constitution is read and construed in connection with section 2, art. 17, of the Constitution, the legislative enactment in question is valid and constitutional. The real issue, as stated by the defendant, is, "Does our Constitution prohibit the Legislature from providing for more than one judge for the county court

regardless of the size of the county or the amount of court work?"

The defendant presents four contentions as follows:

"1. Our state Constitution, so far as it relates to the legislative department, is not a grant of enumerated powers to the state government, but is a limitation thereon, and that department possesses all the legislative powers not prohibited or restricted by the provisions of the Constitution. Burks v. Walker, 25 Okla. 353, 355, 109 Pac. 544.

"2. 'A restriction or limitation upon the power of the Legislature, on any subject of legislation, will not be presumed or implied, unless from the entire instrument it appears that it was so intended.' State ex rel. v. Hooker, 22 Okla. 712, 98 Pac. 964.

"3. 'It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts are to be considered void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.' Chief Justice Marshall in Fletcher v. Peck, 6 Cranch, 87, 128, 3 L. Ed. 162; Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. 1002. See, also, Rakowski v. Wagoner, 24 Okla. 282, 103 Pac. 632; McCord v. State, 2 Okla. Cr. 214, 101 Pac. 280; Stout v. State ex rel. Caldwell, 36 Okla. 744, 130 Pac. 553.

"4. Two constitutional provisions relating to the same subject-matter must, if possible, be so construed as to give effect to every part."

The defendant contends that under section 2, art. 17, supra, the Legislature has express power to make changes in county offices unless in conflict with section 11, art. 7, supra, and calls attention to the abolishment of the office of register of deeds by the consolidation of the duties of that office with those of the county clerk (chapter 181, Session Laws 1913), the consolidation of the duties of the clerk of the county court and clerk of the district court in a court clerk (chapter 161, Session Laws 1913), additional duties imposed upon the county court in the care of delinquent and dependent children, and service upon the excise board. The power to increase the duties has been sustained by the decision of this court in Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. 1002.

The defendant contends that "there is nothing in the nature of the county court or in the office of county judge, as defined by the Constitution, which inhibits the idea of more than one judge" and calls attention to the fact that "district courts have their plural judges to meet the exigencies of court business and such plurality has been upheld by this court."

The defendant states the rule of construction to be:

"When words and phrases are employed in one part of a statute or written Constitution in a plain and manifest sense, they are to receive the same interpretation when used in every other part, unless it manifestly appears from the context, or otherwise, that a different meaning was intended to be applied to them. Walton v. Donnelly, 83 Okla. 233, 201 Pac. 367."

He calls attention to the fact that "a," "the," "he," and "his" are used in precisely the same manner in sections 9 and 11, art. 7, supra.

By virtue of section 1, art. 7, of the Constitution, the judicial power of this state is vested in the Senate, sitting as a court of impeachment, certain courts therein named, "and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law." The jurisdiction of the Supreme Court is fixed by section 2, art. 7, and there is no provision therein for the changing thereof, except as to criminal cases when a Criminal Court of Appeals "shall be established by law." By section 3, art. 7, of the Constitution, it is provided that the Supreme Court shall consist of five Justices "until the number shall be changed by law;" the state shall be divided into five Supreme Court judicial districts "until the Legislature shall change the number of members of the court," and candidates for Justices of the Supreme Court shall be nominated "in the manner provided by law." The manner of the election of a Chief Justice is prescribed by section 6, art. 7, of the Constitution, and "thereafter the Chief Justice shall be elected in the manner provided by law." The manner of invoking the appellate and original jurisdiction of the Supreme Court is prescribed by section 8, art. 7, "until the Legislature shall otherwise provide." It is clear that provision is made throughout those sections for certain legislative changes in the constitutional provisions. Similar provisions for changes with reference to district judges appear. By section 9, art. 7, the state shall be divided into 21 judicial districts "until otherwise provided by law." The original jurisdiction of district courts, by section 10, art. 7, may be changed "by law" except as therein limited, and the appellate jurisdiction of district courts may be changed "by law" except as therein limited. By that section the district courts, "or any judge thereof," shall have power to issue certain writs.

Section 11, art. 7, supra, provides for the establishment in each county of "a county court;" that there shall be elected in each county "a county judge" who shall hold "his" office until the time fixed therein, and that thereafter the term of office of "the county judge" shall be two years and that "he" shall be elected at each biennial general election. The qualifications of "the county judge" are prescribed. "The county judge" shall be "judge of the county court." Nowhere is there any provision therein for the changing of any of those constitutional provisions. The next section, section 12, art. 7, provides for original jurisdiction of the county court "until otherwise provided by law" under the limitations therein contained and for the appellate jurisdiction "as may be provided by law." While section 10, Id., provides that the district courts "or any judge thereof" shall have power to issue writs, section 12, Id., provides that the county court "or judge thereof" shall have power to issue writs. Section 9, art. 7, Id., provides that, in the event "any judge" shall be disqualified, a judge pro tempore may be agreed upon, while section 12, art. 7, Id., provides that when "the county judge" is disqualified, a judge pro tempore may be selected. The appellate jurisdiction of the county court is prescribed by section 14, art. 7, Id., "until otherwise provided by law." Appeals in probate matters in the county court to the district court are provided by section 16, art. 7, Id., "until otherwise provided by law." Section 18, art. 7, Id., provides for the jurisdiction of the justices of the peace "until otherwise provided by law."

Section 9, art. 7, Id., authorizes the Chief Justice to designate another district judge to hold any term of court in a district in lieu of the district judge elected therein; to appoint any district judge of the state to hold court in any district court, and to designate some other district judge to try cases in which the district judge elected shall be disqualified and no judge pro tempore shall have been elected. It further provides that two or more district judges may sit separately in any district at the same time. Section 11, art. 7, Id., contains none of those provisions. Certainly there is as much reason for such provisions with reference to county judges as there is for them with reference to district judges and the fact that those provisions were not included in section 11, Id., must be given some effect.

An examination of article 7, Id., entitled "Judicial," discloses that the makers of the Constitution repeatedly provided for changes in certain of the provisions thereof by law, but nowhere therein does it appear that there was any provision made for increasing the number of county judges in any county by law. It seems that a constitutional convention would not in terms provide for the changing of the jurisdiction of a justice of the peace by the Legislature and at the same time intend to change the number of county judges, without saying so in plain and unambiguous terms. It seems that a constitutional convention would not in terms provide for the changing of the jurisdiction of a county court by the Legislature and at the same time intend to have the number of county judges changed, without saying so in plain and unambiguous terms. The context of the article discloses that the makers of the Constitution understood the peculiar conditions affecting the county court and that they considered it important that the office of county judge should not be increased in number.

In our opinion, no other conclusion can be reached when we find that provision was made for sending other district court judges into the district to preside over the district courts in the case of illness of the district judge, or if for any other cause he shall be unable to preside; for sending additional district judges into the district to hold court when the public business required it, and for designating some district judge to try cases where the elected district judge is disqualified and no judge pro tempore has been elected, and that no such provisions were made with reference to the county judge. The makers of the Constitution must have understood that a county judge as well as a district judge might become ill or for other causes be unable to preside over the county court to which he was elected, and it might have been advantageous to have had a provision authorizing the Chief Justice to designate any county judge in the state to hold any term of court in the county in lieu of the judge elected to hold the county court in that county, but no such provision was made. It was doubtless recognized that public business might require other county judges of a state to hold court in the county court in the county when public business should require it, but no provision was made therefor. It was doubtless recognized that it might be advisable for two or more county judges to sit in the county separately at the same time, but no provision was made therefor. Such a provision is attempted to be made by the legislative act under consideration and we are asked to hold that the Legislature had authority to make that provision when the

makers of the Constitution made provision therefor with reference to district judges and failed to make provision therefor for county judges. The makers of the Constitution doubtless understood that county judges might be disqualified from trying cases in the county court and that a judge pro tempore might not be elected and that it might be advisable to authorize the Chief Justice to designate some other county judge to try such case, but no provision therefor was made. The obvious reason for the failure, in the sections dealing with the county judge, to include the provisions made with reference to district judges was the particular duties of the county judge. We do not consider it necessary to discuss those duties further than to say that the county judge, sitting in probate matters, has a fiduciary relationship that ought not to be disturbed by any other person. To him is given considerable discretion in such proceeding.

The defendant relies upon section 2, art. 17, of the Constitution, and contends that thereby authority is granted the Legislature to "change the county offices therein named, including the judge of the county court," but the concluding language of that section is, "except as in this Constitution otherwise provided." That section was intended to create, subject to change by the Legislature, certain county offices, including the county attorney, sheriff, and so forth. It cannot be said to have created the office of county judge, for the office of county judge was created by section 11, art. 7, Id. Section 2, art. 17, Id., provides that there are hereby created, subject to change by the Legislature, certain county offices, except as in this Constitution otherwise provided. No one of the offices enumerated in section 2, art. 17, Id., other than that of county judge, is created elsewhere in the Constitution, and the exception at the end of this section must have referred to the county judge, thereby excepting that office from the legislative authority to make changes in county offices.

It is said that section 18 of the schedule affords some authority for the legislative enactment under consideration, but it will be noted that that section provides for changes in "the terms, duties, powers, qualifications and salaries and compensation" and has no reference to number, and it is likewise limited by the language, "not otherwise provided by this Constitution." The terms, duties, powers, and qualifications of the county judge are otherwise provided by the Constitution.

The language and reasoning of this court in Oklahoma City Land & Development Co. v. Hare, 66 Okla. 190, 168 Pac. 407, and in Re Byrd, 31 Okla. 549, 122 Pac. 516, is to the effect that one district judge was to be elected in each district except the Thirteenth judicial district, wherein two district judges were to be elected, "until otherwise provided by law." That construction must be given section 11, art. 7, Id., except as to "otherwise provided by law," and the construction to be given section 11, Id., may not include that phrase, for that phrase is conspicuous by its absence from that section.

We cannot follow the reasoning of the Supreme Court of Arkansas in State v. Martin, 30 S. W. 421, to the effect that the articles used in a constitutional provision are too indefinite to define or limit the number of judges which may be provided by legislation. We cannot hold that "a county judge," "the county judge," "his election," and "a lawyer" refer to two or more judges. As well might it be said that the provision in the Constitution for "a Governor" would authorize a legislative enactment for two Governors. The illustration used by the plaintiff is that an agent authorized to buy "a horse" would not thereby be authorized to buy two horses.

In Dixon v. Shaw, State Auditor, 122 Okla. 211, 253 Pac. 500, this court said:

"When said provisions are called in question, as here, we reach no conclusion but the language used is to be measured by such a well-recognized rule existent at the time of the adoption of the Constitution. But, irrespective of rules of interpretation, we think that the language employed by the makers of the basic law of the state should not be given a strained or subtle meaning, but such meaning as the average citizen would conclude the language imports. This for the reason that the electorate, in ratifying the document and thereby breathing life into the same, considered the provisions as the language used fairly imports."

Judge Cooley, in his work on Constitutional Limitations, at page 69, says:

"In this way a solemn instrument—for so I think the Constitution should be considered—is made to mean one thing by one man and something else by another, until, in the end, it is in danger of being rendered a mere dead letter; and that, too, where the language is so plain and explicit that it is impossible to mean more than one thing, unless we first lose sight of the instrument itself, and allow ourselves to roam at large in the boundless fields of speculation. For one, I dare not venture upon such a course. Written Constitutions of government will soon come to be regarded as of little value

If their injunctions may be thus lightly overlooked; and the experiment of setting a boundary to power will prove a failure. We are not at liberty to presume that the framers of the Constitution, or the people who adopted it, did not understand the force of language."

The average citizen who voted for the adoption of the Constitution of Oklahoma noted that there was no "until otherwise provided by law" in the section dealing with the county judge. He had before him section 9, dealing with the district judge, and had an opportunity to observe the distinction in the language of the two sections. The language used was such as to indicate to him that one county judge for each county was to be elected. There was nothing therein to indicate to him that the language meant "at least one county judge" and there was nothing therein to indicate that the Legislature was authorized at some future date to provide for four or five county judges if it saw fit to do so. If the Legislature is authorized to provide for two county judges in Oklahoma county, it is authorized to provide for five if it cares to do so.

The construction placed on statutes or constitutional provisions by officers in the discharge of their duties or by the executive and legislative departments of government, though not controlling, is highly persuasive. Foote v. Town of Watonga, 37 Okla. 43, 130 Pac. 597; Glasco v. State Election Board, 121 Okla. 119, 248 Pac. 642; Cooley on Constitutional Limitations, pages 81-84. The legislation prior to the adoption of the act in question indicates the legislative understanding that there was to be only one county judge in each county. When the terms of county offices were increased to four years, the term of the county judge was not so increased. Chapter 121, Session Laws 1923-24. The history of Oklahoma for more than 20 years discloses no prior attempt on the part of the Legislature to provide for more than one county judge in each county of the state.

The maxim, "Expressio unius est exclusio alterius"—the expression of one thing is the exclusion of another—was approved by this court in Cornell v. McAlester, 121 Okla. 285, 249 Pac. 959, wherein the court said:

"Although the Constitution does not expressly inhibit the power of the Legislature to so do, yet the affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the Legislature to establish a different policy."

The Arkansas decision, State v. Martin, supra, is in conflict with the decision of this court in Dancy, Sheriff, v. Owens, 126 Okla. 37, 258 Pac. 879, wherein this court, in considering the constitutional provision with reference to the establishment of this court, with knowledge that the Supreme Court of New York was not the supreme court of that state, said:

"We pause and call attention to certain language, 'a Supreme Court.' The article 'a,' as used here, can have no meaning except one—one Supreme Court."

We hold that the language, "a county judge," as used in section 11, Id., has no meaning except one—one county judge.

We therefore hold that, under the Constitution of Oklahoma, the Legislature of Oklahoma is without authority to provide for the election or appointment of more than one county judge for any county in the state of Oklahoma and that the legislative act under consideration is unconstitutional and void.

The prayer of the plaintiffs is granted and the defendant, D. S. Levy, is prohibited from acting as county judge of the county court of Oklahoma county. Let a peremptory writ of prohibition issue.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., absent. HEFNER and KORNEGAY, JJ., dissent.

KORNEGAY, J. (dissenting). I cannot agree with the reasoning in the majority opinion in this case. Owing to the importance and far-reaching effect of the decision, depending upon the written law, and not questions of fact, I feel it my duty to state my reasons for dissent in writing, instead of registering a simple conference protest.

The circumstances out of which the litigation arises are that the Legislature of the state, at the last session, passed a law providing for the appointment of an additional county judge for Oklahoma county, and the act was approved by the Governor of the state. The party appointed by the county commissioners took the oath of office.

The opinion of the majority of the court strikes all this down, and holds it for naught. The necessity for the additional help appears to be imperative, and it is necessary to such an extent that the emergency clause is attached. However, aside from the necessity declared in the act, this court must know that with the large increase in population that has been had in Oklahoma county since the Constitution was formed, and with the class of business that comes under the juris-

diction of the county court, the necessity declared is real, and not political. This court must know that the court called to administer all decedent estates, and the estates of minors and all other incompetents, is handling a class of business calling for prompt action and efficient administration. This court must know that court machinery for, in due course, handling this class of business, which comes nearer keeping pace with the increase of population than any other class of legal business, has not been increased in Oklahoma county since statehood, though the number of Supreme Justices in the state has been increased from five, without law clerks, to nine with law clerks, and three Criminal Court of Appeals judges have been added, besides referees, though the increase in volume of business in the probate work of Oklahoma county has been greater in proportion than the increase in the business of this court. The same situation applies to the district courts. Getting into the county courts is liable to happen to all residents who are alive, but death is sure. Widows and orphans are constantly being created. Their welfare is of more importance than that of most any other portion of the community. They are weak, the others can take care of themselves.

Another consideration that should come into the account is that our government is divided, roughly speaking, into three branches, the legislative, the executive, and the judicial. Each member of each branch is charged with the duty of supporting and obeying the Constitution. While this court has the power to declare an act of any one of the other departments void, as being forbidden by the fundamental law, and in a clear case it should do its duty, yet it should not approach the subject lightly, but should, at all times, recognize that the oath to support the Constitution and laws of this state is just as binding on the members of the Legislature, and the Governor of the state and other executive officers of the state, as it is upon the members of the judiciary. Here, there must have been two-thirds of each house that voted for this measure. It was approved by the Governor acting under his constitutional oath. The appointment was made by county commissioners acting under their oaths.

The draftsman of the bill was evidently familiar with the decisions of this court, and the Criminal Court of Appeals, as well as the various acts of the Legislature affecting the matter. This court appears to have given too much weight to the term "a" found in the Constitution. When more members were required to transact the business of this court, the necessary legislation was had. Delegation of judicial functions was permitted. The number of district judges have been increased. The district in which Oklahoma county is located, aside from other measures provided to take care of its increased litigation, has been accorded additional number. The original number was two, though the present number is five.

The most important business of all, the protection of the family, when the head of the family has answered the last summons, is what this opinion says the Constitution will not permit. "Equality is equity" is one of the maxims of the law, and "Turn about is fair play" is the view of the ordinary citizen. To say that the committee who fixed the Constitution designedly fixed it so that the Legislature was empowered to give relief to every class, except that class that it is the duty of every citizen to protect and defend, is to convict it, not of folly, but of recreancy to a sacred trust. To say that the oath to support the Constitution was disregarded by each member of the Legislature and by the Governor in the passage of the act ordinarily would require proof most clear and convincing. Among their number are men who, for intelligent integrity, will compare favorably with any. To say that the executive officers who appointed the respondent did not appreciate and understand what they were about is a charge easily made, but scarcely susceptible of being proven.

Evidently undue weight was attached to the meaning of the term "a" as found in connection with "county judge" in the Constitution. When one reflects, however, concerning an incident happening in the Supreme Court of a neighboring state a few years ago, wherein as small a thing as a comma so disturbed the cerebral control of the court that it resulted almost in a cataclysm, both for the court, lawyers, and clients, he is led to believe that perhaps a few turns of the pages of an ordinary school dictionary would serve a better purpose than the citation of decisions of courts of the last resort, in a great many cases.

The decision largely goes off upon the proposition of the meaning of the word "a," sometimes changed to "the" and sometimes to "his," as a qualifying word placed before the words "county judge." The climax of the decision appears to be based upon a decision of this court, Dancy, Sheriff, v. Owens, 126 Okla. 37, 258 Pac. 879. The language of the majority is:

"The Arkansas decision, State v. Martin, supra, is in conflict with the decision of this court in Dancy, Sheriff, v. Owens, 126 Okla. 37, 258 Pac. 879, wherein this court, in considering the constitutional provision with reference to the establishment of this court, with knowledge that the Supreme Court of New York was not the Supreme Court of that state, said: 'We pause and call attention to certain language, "A Supreme Court." The article "a," as used here, can have no meaning except one—one Supreme Court.' We hold that the language, 'A county judge,' as used in section 11, Id., has no meaning except one—one county judge."

I think, furthermore, that the majority opinion overlooked the fact that the Constitution of Oklahoma was formed at a time when the future growth of the community was in plain view, and especially with reference to the due administration of probate matters. It was specially provided that the county court should have the general jurisdiction of a probate court, and "transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof." Const. art. 7, s. 13.

The court also overlooks the fact that a Constitution is a general framework of government, and necessarily the details of working it out must be left to the Legislature. In the case of the Oklahoma Constitution, however, there were two areas of country, that had not been subject to the same laws, prior to its adoption. The Indian Territory side had been governed directly by acts of Congress. The Oklahoma side had gone through a territorial form of government. Congress, in the exercise of its power, provided in the Enabling Act that the laws of Oklahoma should be the laws of the new state, unless modified by the Constitution.

In order to adapt the laws to the situation as found, with the population then existing, and that which was expected, some details of legislation were put into the Constitution and for that reason expressions are found throughout the Constitution permitting a change by law, as it is sometimes described and sometimes by acts of the Legislature. A reading of the Constitution is convincing that those terms were used interchangeably in the Constitution.

It must be further remembered that a great many committees were appointed in the Constitutional Convention, and there were assigned certain subjects to each committee. Inevitably, however, the work of the committee, in some degree, would overlap. One committee would report judicial matters, and another county and township government matters. Necessarily they shade each into the other, and sometimes there was duplication. However, the situation being complex as it was, there was naturally more duplication in this Constitution than in Constitutions preceding it.

In view of the difficulties arising from the two different forms of government, that had to be merged into a new one, a great many expressions, depending entirely upon the individual making the expression, came into this Constitution that would not have come into it had it been framed entirely by one man, or a few men.

The decision in this case, as it seems to me, disregards precedent and also disregards the plain provisions of the Constitution. The decisions relied upon do not seem to be applicable to the case we have. The Criminal Court of Appeals of this state, as well as the Supreme Court of this state, have spoken to the contrary as to the effect of the provision in the Constitution dealing with the office of county judge.

The decision in this case confines itself, in a large measure, to a comparison of the various provisions of the Constitution dealing with the judiciary, and casts aside the provisions dealing with the county judge. The decision is based on the fact that "a judge" means "one judge", and reference is made in the latter part of the decision that we might as well have two Governors, under our Constitution, as two judges of the county court, basing it largely on the fact that the article "a" can be found before the word "Governor" in the Constitution.

The analogy is not borne out, however, by the context or by the nature of things. In describing the executive department, the word "a" is used before the word "Governor", but the balance of the Constitution on the subject, in using the word "Governor", sometimes uses it without an article, sometimes with the article "a", and sometimes with the article "the" before it. But it is not believed that the articles put before the word have very much significance in determining whether or not there could be two Governors in the state.

The word "supreme" carries with it the idea of superlative aloofness. There could not be two supreme beings. If we should add another grain to the sands of Oklahoma we would not add very much to what was already there. And so the addition of the

letter "a", used as a qualifier of the term "supreme", would not add anything to the idea of solitude, carried by the word "supreme." It does not seem that the decision relied on would add anything towards a better understanding of the matter here involved. To say that there were two supreme beings would be very much like the old conundrum, that we heard as youths, as to what would happen if an immovable body should come into contact with an irresistible force. So applying the term "a" to the Supreme Court and getting a decision that it means one Supreme Court, ought not to go very far towards bringing about conviction in this case.

As applied to the terms here used, there might be some slight significance to be attached to the article "a" before county judge but it would be rather small. As well might we argue in this case, that because in the Constitution the term "county courts" was used in connection with the issuance by a county judge of certain writs, that it means more than one, and therefore this act was constitutional.

Section 12, art. 7, defining the jurisdiction of the county court, pluralizes the county court, and in referring to the disqualifications of the judges of the district court it uses the term "county court or judge thereof" in conferring power to issue writs of injunction. The term "county courts" is used in section 17 of the same article. Again in section 12, a pro tempore judge may be selected in the manner provided for judges pro tempore in the district court. Again in section 18 of the schedule we find a provision as follows:

"And provided further, that county attorneys and judges of the county court of the several counties of the state, having a population of more than 20,000 shall be paid a salary of $2,000 per annum; and of counties having a population of more than 30,000, a salary of $2,500 per annum; and of counties having a population of more than 40,000, a salary of $3,000 per annum; such salaries to be paid in the manner as is provided by law in force in the Territory of Oklahoma for the payment of salaries to county attorneys."

It would be just about as logical to say that because the word county judge is pluralized in this section, and the word county court is pluralized in another section, the Constitution provided for the election of more than one county judge in each county, as to say that because the article "a" appears before the word county judge the framers of the Constitution intended to prevent the Legislature from providing an increase in the number of county judges when necessary to carry on the probate business of an increased population.

The provision more nearly applicable and controlling than anything else appears to be the provision concerning county and township government, article 17 of the Constitution. Section 2 in its entirety is as follows:

"Sec. 2. Enumeration of County Officers. There are hereby created, subject to change by the Legislature, in and for each organized county of this state, the offices of judge of the county court, county attorney, clerk of the district court, county clerk, sheriff, county treasurer, register of deeds, county surveyor, superintendent of public instruction, three county commissioners, and such municipal township officers as are now provided for under the laws of the Territory of Oklahoma, except as in this Constitution otherwise provided."

The words "except as in this Constitution otherwise provided," attached to this section, are by the majority construed so as to neutralize the qualifying words "subject to change by the Legislature." The natural order would be for the phrase "except as in this Constitution otherwise provided" to refer to that which precedes it, namely, "such municipal township officers as are now provided for under the laws of the Territory of Oklahoma." The word "provided" is probably used in the same sense in both places, and the contrast is made between the provision for municipal township officers that are not enumerated in the section at all, but are enumerated under the territorial laws. The natural order of the application of the phrase "subject to change by the Legislature" would have reference to that which precedes it, namely, "hereby created," and its subjective complements. Here again perhaps a reference to an ancient work on English grammar might serve a better purpose than a "case from some Supreme Court." Black, in his work on Interpretation of Law, at rule 73, probably gives the key, however, in the black letter text, as well as the main portion, as follows:

"73. As a general rule, relative, qualifying, or limiting words or clauses in a statute are to be referred to the next preceding antecedent, unless the context, or the evident meaning of the enactment, requires a different construction.

"This grammatical rule is of use only in cases where there is ambiguity or doubt on the face of the statute. If there is difficulty in interpreting the qualifying words of a sentence, the rule is to apply the relatives 'which', 'such', 'said', and other relative or limiting words or phrases, to such terms or clauses as shall immediately precede them, rather than to such as are more remote."

It is stated in the opinion that as there

has been no legislation, there is a legislative construction that the power to provide for additional county judges did not exist in the Legislature. Such does not appear to be the case, however. On more than one occasion has it, by this court and the Criminal Court of Appeals, been declared that section 2, art. 17, expressly conferred power on the Legislature, however, to make changes in the office of county judge. The authorities are collated in the Statutes of 1921, at the section, and a reading of the cases there cited will give a clue to the acts of the Legislature on the subject. There are two such acts, section 1948, C. O. S. 1921, and also section 3185, which are as follows:

"1948. Investigations—Power of Courts—Record of Testimony. It shall be the duty of any judge of any court of record, upon the written request of the county attorney, or upon the sworn complaint of any other person, to issue subponenas for any witness that may have knowledge of the violation of any provision of this act, and such judge shall have the power, and it shall be his duty to compel such witness to appear before him and give testimony and produce any books or papers that will aid or assist in the prosecution of such investigation and inquiry into any violation of any provision of this act; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence. The testimony of each witness shall be reduced to writing by said judge, or by some person designated by him, and the same shall be signed by such witness. No person shall disclose any evidence so taken, nor disclose the name of any person so subpoenaed and examined, except when lawfully required to testify as a witness in relation thereto; and the unlawful disclosure, by any person, of any such evidence or of any matter or thing concerning such examination shall be a misdemeanor. Should said judge be unable to hold and conduct such inquiry and investigation for want of time, he may appoint a special judge who shall possess the qualifications and have the power in respect to such matters as the judge of the county court. Should any witness refuse to appear before such judge, in obedience to such subpoena, or refuse to produce any books or papers when lawfully required so to do, or having appeared, shall refuse to answer any proper question, or sign his testimony when so required, it shall be the duty of such judge to commit such person to the county jail until he shall consent to obey such orders and command of such judge in the premises, and in addition thereto such person may be punished, as for contempt of court, in accordance with the Constitution and laws of this state. The special judge appointed under the provisions of this section shall take the oath of the Constitution for state officers, and shall receive the compensation allowed by law for notaries public for taking depositions and be paid by the county in which such proceeding is had, upon the order of the judge who appointed him. When it is shown upon the taking of such testimony that there is probable cause to believe that any person has violated any provision of this act, the county attorney shall immediately prepare an information charging such person with such offense and file such information in some court of competent jurisdiction."

"3185. Temporary Judge Chosen by Bar. Whenever the county judge of any county is unable to perform the duties of his office because of illness, absence from the county, or other disqualification, a temporary judge may be chosen by the bar of the county, and such temporary judge so chosen shall have the same authority and the same power as the regular judge."

See, also, the case of State ex rel. Hamilton v. Taylor, 68 Okla. 38, 171 Pac. 452, where the court says:

"Section 1830 of this statute provides for the election of a temporary judge of the county court whenever the regular judge is unable to perform the duties of his office because of illness, absence from the county, or other disqualifications, and further provides that such temporary judge shall have the same authority and the same power as the regular judge.

"Section 1831 of this statute makes it the duty of the clerk of the county court to fix a time for the election of such temporary judge, and to serve a written notice on each member of the bar of the county at least 48 hours prior to such election. These sections apply to the election of a temporary judge to act in all cases and all matters properly coming before the county judge."

Numerous other cases are cited in the statute, setting out section 2, art. 17, most of them giving reasons why a court should endeavor to uphold rather than destroy the acts of co-ordinate departments of government. See, in this connection, Childs v. State, 4 Okla. Cr. 474, 113 Pac. 545; Anderson v. Rittenbusch, 22 Okla. 761, 98 Pac. 1002; Beaty v. State, 35 Okla. 677, 130 Pac. 956. In the last case, Justice Williams says:

"By section 2, art. 17, of the Constitution (section 320a, Williams' Anno. Const.), there was created, subject to change by the Legislature, in and for each organized county of this state, the offices of the judge of the county court, county attorney, clerk of the district court, county clerk, sheriff, county treasurer, register of deeds, county surveyor, superintendent of public instruction, three county commissioners, and such municipal

township officers as were then provided for under the laws of the territory of Oklahoma, except as otherwise provided in the Constitution."

See, also, Levine v. Allen, 96 Okla. 252, 221 Pac. 771, and the cases there cited. See, also, Leiber v. Argaubright, 25 Okla. 177, 105 Pac. 341, where Justice Dunn says:

"Section 18, art. 7, of the Constitution (Snyder's Const. p. 221), creates the office of justice of the peace with jurisdiction co-extensive with the county. Section 2, art. 17, of the Constitution (Snyder's Const. p. 335), enumerates the different county officers provided for under the Constitution, and a justice of the peace is not among them, and then provides for such municipal and township officers as are provided for under the laws of the territory of Oklahoma. Section 3, art. 1, c. 81 (section 6664), Wilson's Rev. & Ann. St. Okla. 1903, enumerates the different township officers, among which are two justices of the peace. Section 4, art. 1, c. 81 (section 6665) of the same statutes, then provides that 'all township officers shall reside and hold their offices in the township for which they shall have been elected or appointed,' etc. Hence, we notice that the office of justice of the peace is not included among those provided for the county, and is specifically included among those for each township. While the jurisdiction of the justice of the peace is territorially as extensive as the county within which the township in which he is elected is located, yet, to our minds, the provision of the statute requiring him to reside within his township and hold his office therein contemplates that he shall be and remain within his township for the transaction of his official business."

It appears therefore that the argument of legislative construction in this case should not have any weight, if a negative could be used for that purpose at all.

It further appears that the questions involved in this case are settled by the decisions of this court. However, in a matter of this kind, the powers of the Legislature, as given in the Constitution, largely should be looked to rather than expressions of courts made in passing on cases. In the judicial part of the Constitution, there is contained no express limitation on its powers. In section 2, art. 17, express power is conferred. The Legislature, years ago, acted on that theory. Until now it does not appear to have been questioned.

Viewed in that way, it is clear to my mind that the Legislature had full power to pass the act in question, and that in undertaking to help the people that needed help they did not violate the fundamental law.

HEFNER, J. (dissenting). Sections 11, 12, and 13 of article 7 of the Constitution create a county court and make it coextensive with the county.

The majority opinion holds unconstitutional the act of the Legislature providing for an additional county judge. Clearly, there can be but one county court. The question, however, as to increasing the number of the judges of a county court is not, to my mind, free from doubt and it is a well-recognized rule of construction that unless an act of the Legislature is clearly unconstitutional it should be upheld.

I think the rule of construction applicable to the instant case is correctly stated in 6 R. C. L., paragraph 73, and it is as follows:

"To justify a court in pronouncing a legislative act unconstitutional, or a provision of a state Constitution to be in contravention of the Constitution of the United States, the case must be so clear as to be free from doubt, and the conflict of the statute with the Constitution must be irreconcilable, because it is but a decent respect to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until the contrary is shown beyond reasonable doubt. Therefore in no doubtful case will the judiciary pronounce a legislative act to be contrary to the Constitution. To doubt the constitutionality of a law is to resolve the doubt in favor of the validity."

If the act is held unconstitutional, it must be by implication because there is no direct provision of the Constitution which prohibits the Legislature from increasing the number of county judges. It must be recognized that before the statute can be stricken down, the conflict with the Constitution must be irreconcilable. In a doubtful case the judiciary should not pronounce the legislative act contrary to the Constitution. If there is a doubt as to the constitutionality of the act, the doubt must be resolved in favor of its validity. If the act under consideration had created two county courts in the same county, then I think it would be irreconcilable with the Constitution. The act, however, does not create two county courts. It does no more than provide for an additional judge for the court that was created by the Constitution. Can it be said that the Constitution absolutely prohibits the Legislature from providing for an additional county judge under certain conditions? I think not. Since the act only provides for an additional county judge, I do not think it in irreconcilable conflict with the Constitution.