Elsie Mae MUNSON, nee Snyder, contestant, Plaintiff in Error,

v.

John Hosea SNYDER, proponent, Defendant in Error.

No. 36338.

Supreme Court of Oklahoma.

Oct. 5, 1954.

Hardy & Hardy, by Milton W. Hardy, Tulsa, for plaintiff in error.

Cleo Wilson, Tulsa, for defendant in error.

DAVISON, Justice.

This is an appeal from the District Court of Tulsa County, Oklahoma, where, after trial de novo upon appeal from the County Court of said County, the will of John A. Snyder, deceased, was admitted to probate and the judgment of the said county court to the same effect was affirmed. John Hosea Snyder, a son of deceased, was proponent. Elsie Mae Munson, nee Snyder, a daughter, was contestant. They will be so referred to.

John A. Snyder died in Tulsa, Oklahoma, on February 4, 1953, at the age of 88 years. He left surviving him, his two sons, Oliver Theodore and John Hosea, his daughter, Elsie Mae Munson, and a grandson, J. W. or Billy Snyder, the latter being a son of John Hosea. Because of his father's marital difficulties, Billy had been raised by his grandfather, the deceased. The will, which is the object of this litigation, consisted of a one sheet printed form, both sides of the sheet being used, as follows:

(Front side)

## Will

I, *John A. Snyder,* of *Tulsa, Oklahoma, formerly a resident of Custer* County, State of *Oklahoma,* being of sound mind and body, do hereby declare, make and publish this as my last will and testament, hereby revoking any and all former wills made by me at any time.

First. I direct that all my debts be paid, including the expenses and administration of my estate, all inheritance and estate taxes, and the expenses of my last sickness and funeral expenses.

Second. I request the appointment of my son John Hosea Snyder as executor of this my last will and testiment.

Third; to my daughter Elsie Mae Snyder I give the sum of One Dollar.

Fourth: It has been the desire of my son Oliver T. Snyder that he have my personal pocket watch and it is my desire that it be given to him.

Fifth; I will and bequeath to my son Oliver Theodore Snyder, my son John Hosea Snyder and to my grand son John William Snyder each one third of all my remaining property after the first four provisions in my will have been satisfied.

(Reverse side)

In Witness Whereof, I have hereunto set my hand to this, my last will and testament, this *24* day of *August, 1949,* in the presence of *Estalle B. Granger, Lorene C. Gorshing* and *M. O. Dawson* all of *Custer City,* State of *Oklahoma*

*John A. Snyder*

The foregoing instrument consisting of one single sheet of paper, 8½ x 14 inches, including this attestation was duly dated, executed and published, and declared by the said *John A Snyder* as and for *His* last will and testament in the presence of us and each of us, who, at *his* request and in *his* presence and in the presence of each other, have subscribed our names as witnesses this *24* day of *August, 1949.*

| Name | Address |
|---|---|
| Estalee B Granger | Custer City, Okla. |
| Lorene C. Gorshing | Custer City, Okla. |
| M. O. Dawson | Custer City, Okla. |

Last Will and Testament     OF     *John A Snyder*     OF     Tulsa     *729 North Louisville St*     Oklahoma

John A. Snyder was living on his 160 acre farm near Custer City, Custer County, Oklahoma, in 1938 when his wife died. Shortly thereafter, he sold all his live stock, farm equipment and other personalty and moved to Tulsa to live with his daughter, Elsie. After about a year he and Billy moved back to the farm, living there until 1947, the year of Billy's graduation from high school. He was very attached to, and loved his grandson dearly. That summer, he again sold all his personal property, except his personal effects and a feather bed, and again rented his farm. In October 1947 he took his remaining personal belongings and moved to Tulsa, where he lived until his death five to six years later.

He first went to the home of his daughter, Elsie. John Hosea, who had remarried several months before, was also living in Tulsa. After he had been at his daughter's home for about a month, he had his grandson take him to the home of John Hosea where he lived the rest of his life. Billy, the grandson testified that the reason he gave for moving was that his daughter and her husband, were mean to him and would not let him lie on the couch nor get into the refrigerator and that he would go to a poor farm rather than go back to Elsie's.

There was definite antagonism between the two families—that of Elsie and that of her brother. Except for one time, immediately before the death of her father, Elsie was never in her brother's home. John A. Snyder made weekend visits to the farm two or three times a year during the period when he was living in Tulsa. At one time, in 1949, he stayed about a week and it was then that he made his will. His grandson had taken him to Custer City and he had his banker there prepare the will on one of the forms the bank kept as a service to its customers. It was at his direction that the banker filled in the blank showing decedent as "of Tulsa, Oklahoma." After his death, his body was taken back to Custer County for burial beside that of his wife. It was at that time that John Hosea and his wife talked to the banker and learned of the will. They returned with it to Tulsa where it was filed for pro-

bate. Elsie talked to a lawyer in Custer County soon after her father's burial and was informed by him that probate proceedings could not be had there.

Four propositions are argued as grounds for reversal of the judgment admitting the will to probate. They will be discussed in the order presented.

■ It is argued that, in executing the will, the provisions of 84 O.S.1951 § 55 were not complied with in that the same was not "subscribed at the end thereof by the testator himself". The question has not heretofore been before this court but the contestant cites many cases from other jurisdictions that are in some respects similar to the instant one. It is contended that the statutory requirement has not been met in that the signature of the testator was on the back of the will and not at the end thereof; that, under the holding in the case of In re Abrams' Will, 182 Okl. 215, 77 P.2d 101, a failure to meet such requirements renders the will void in toto.

Under much the same circumstances as here, the meaning and effect of an identical statute was considered by the California Court in the case of In re Chase's Estate, 51 Cal.App.2d 353, 124 P.2d 895. Therein, many cases from the different jurisdictions are cited and analyzed. The following words of the New York Court were, there, adopted:

"Form should not be raised above substance, in order to destroy a will, and the substantial thing in this case is a paper which reads straight-forward and without interruption from the beginning to the end, and when, thus read the signature is found at the end." [In re Field's Will, 204 N.Y. 448, 97 N.E. 881, 884, 39 L.R.A.,N.S., 1060.]

In the case at bar, the will is so written that there could be nothing added after its execution. The only blank part not used in writing the will was marked out with ink lines. It "reads straight-forward and without interruption from the beginning to the end, and when thus read the signature is found at the end." When put in simple language, the objection here raised is that the will was written on two

sides of one sheet of paper rather than on one side only of two sheets of paper. We conclude that the requirements of the statute were complied with, the main purpose of said statute being to void a will wherein dispositive provisions follow the signature of the testator.

■ The second proposition argued by the contestant is that the County Court of Tulsa County did not have jurisdiction of the subject matter because deceased was a resident of, and had property only in, Custer County. The facts relative thereto are that in 1947 the testator sold all his cattle, equipment and other personal property, rented out his farm and moved to Tulsa where he lived until his death. He instructed the banker, in 1949, to write into his will that he was "of Tulsa, Oklahoma." He registered and voted in Tulsa County. The only evidence tending to show that he remained a resident of Custer County was that he yet owned a farm there upon which he had lived until 1947 and that he kept his bank account at the same bank in that County, and that he had told his daughter that he would like to live on the farm again if he had some one to live with him. Although jurisdiction of the court is dependent upon a determination of the residence of the testator at the time of his death, it is, nevertheless, a question of fact. The rule of law applicable thereto was stated in the case of In re James' Estate, 131 Okl. 142, 268 P. 296, and we affirmed in the case of In re Davis' Estate, 171 Okl. 575, 43 P.2d 115. It is as follows:

"A judgment of the trial court in probating a will, and findings of the court upon issues presented by the contestants, will not be disturbed, unless clearly against the weight of the evidence."

Under this rule, the findings of the trial court on the question of residence herein should not be disturbed.

■ The next question urged for reversal of the judgment is that the matter was heard by a County Judge pro tempore appointed as provided by 20 O.S.1951 § 289 and "having been properly challenged had no jurisdiction to hear the proceedings." The argument is founded upon the opinion of this court in the case of Nichols v. Levy, 151 Okl. 245, 1 P.2d 766. The cited case was overruled in the more recent case of Dobbs v. Board of County Com'rs of Oklahoma County, 208 Okl. 514, 257 P.2d 802. The question in the latter case was as to the number of county judges in a county. The reasoning therein equally applies to the method of selection of a county judge pro tempore and need not be here repeated. The statutory provision for appointment of a judge of a Court of Common Pleas as County Judge pro tempore, 20 O.S.1951 § 289, does not violate the provisions of the Oklahoma Constitution.

■■ The remaining proposition is that the will was "unnatural and the result of influence and design and is not entitled to probate." The gist of such argument is that the decedent, John A. Snyder did not make a bequest to his daughter, Elsie, but, instead, bequeathed one third of his estate to his grandson, Billy. There is no evidence in the record from which any inference of undue influence could be raised. All parties seem to have treated the old gentleman with extreme patience and kindness. True, there was some friction between his survivors but none of them mistreated him in any way. What caused him to disinherit his daughter is not apparent but he was an active, mentally competent and alert person until the time of his death. He managed his affairs, his farm and his bank account and privately went to his banker of many years to make his will. What his reasons were for the manner of distribution cannot be established but it is certain that they were of his own free will and desire. That he left a party of his property to his grandson was not unnatural. With the close personal attachment between the two, the only query in the mind of an outsider is why he did not leave all or practically all of his estate to his grandson. Billy was closer to the decedent and more beloved by him than any other member of the family. The evidence so clearly points

to the absence of any undue influence that no citation of authority seems necessary to support our conclusion.

The judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, WILLIAMS and BLACKBIRD, JJ., concur.