(No. 28018.—

ARTHUR F. LINDLEY *et al.*, doing business as Clement Curtis & Co., Appellants, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed September 19, 1944.*

Moses, Kennedy, Stein & Bachrach, (Walter Bachrach, and Robert C. Kelso, of counsel,) all of Chicago, for appellants.

George F. Barrett, Attorney General, (William C. Wines, of Chicago, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiffs, Arthur F. Lindley and five others, co-partners doing business as Clement Curtis & Co., appeal from a judgment of the circuit court of Cook county quashing a writ of *certiorari* sued out by them to review the denial by defendant, the Director of Labor of the State, of their application for a review of the rate determination for the year 1943, under the Unemployment Compensation Act.

The questions presented for decision relate to the construction of section 18(c)(6) of the Unemployment Compensation Act, effective July 1, 1941, and in force January 1, 1943. (Ill. Rev. Stat. 1941, chap. 48, par. 234.) So

far as relevant, subsection (c) then provided: "For the purposes of this subsection two or more employing units which are parties to or the subject of a merger, consolidation, or other form of reorganization effecting a change in legal identity or form shall be deemed to be a single employing unit for the purpose of computing contribution rates, if the Director finds that (a) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto, and (b) immediately after such change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units."

Prior to 1943, all employers who were subject to the Unemployment Compensation Act were required to pay contributions at the rate of 2.7 per cent. Beginning, however, with January 1, 1943, and by virtue of section 18(c) variable rates, ranging from 0.5 to 3.6 per cent were issued to those employers who had incurred liability for the payment of contributions in each of the preceding five calendar years. This plan of contribution rates varies according to the ratio between payments out of the unemployment compensation fund in benefits to employees and payments into the fund by the employer. This ratio is characterized as the employer's employment experience and the rate based thereon is referred to as his merit rating. Employers who did not incur liability for the payment of contributions in each of the preceding five years receive the standard rate of 2.7 per cent.

Clement Curtis & Co. is a brokerage firm long engaged in the securities business in Chicago. Beginning with June 1, 1938, and to and including December 31, 1940, the partnership consisted of four members, Arthur F. Lindley, John G. Curtis, Irving E. Marcus and Arthur A. Clement. Of these, the three first named, Marcus, Lindley and Curtis, contributed eighty per cent of the capital and, pursuant to

their partnership agreement, were entitled to eighty per cent of the profits, if any, and, similarly, shared losses upon the same percentage basis. Clement retired from the partnership on December 31, 1940. Thereafter, and to and including December 31, 1941, Lindley, Curtis and Marcus were the sole partners. They continued to operate the business under the same name and in the same general fashion. December 31, 1941, these three partners admitted Roy E. Bard, Lawrence Williams and James P. Doherty as partners. In this third partnership, the capital contribution of Lindley, Curtis and Marcus was eighty-seven and one-half per cent in the aggregate and of the three new partners, twelve and one-half per cent. It thus clearly appears that from 1938 to and including 1943, Lindley, Curtis and Marcus owned, for all practical purposes, eighty per cent of the first partnership, one hundred per cent of the second, and eighty-seven and one-half per cent of the third.

Upon the basis of these facts, the following initial determination was made: "The Director of Labor has examined the Form LE-38, 'Questionnaire for Determination of Status under Section 18(c)(6)' submitted by you and finds that you meet the conditions set forth in said Section 18(c)(6) of the Illinois Unemployment Compensation Act. Your employing unit and that of your predecessor(s) will be deemed to be a single employing unit for the purpose of computing contribution rates under the Experience Rating Plan of this State."

Subsequently, the Director abandoned this determination and computed the rate to be 2.7 per cent upon the ground plaintiffs did not have five years of employment experience, thereby failing to combine their employment experience with that of their predecessors under section 18(c)(6). Plaintiffs applied for a review of the rate determination and requested a determination of the contribution rate based on the benefit experience of "this employer" for the five years preceding January 1, 1943. This ap-

plication was denied for the reasons, first, that neither the business unit, as constituted in 1943, nor its immediate predecessor unit (the second partnership) was subject to the liability provisions of the Unemployment Compensation Act throughout the calendar years 1938, 1939, 1940 and 1941, within the contemplation of section 18(c), and second, that the experience of the present unit could not be combined with any unit or units other than the second partnership for the purpose of computing contribution rates with respect to the calendar year 1943. In other words, it is the position of the Director of Labor that each time a change in the personnel of the partnership occurred, either by retirement of a partner or the admission of new partners, a new employing unit was created. Plaintiffs protested the denial of their application and petitioned for a hearing. By agreement, the issues presented upon the hearing before the Director's representative were, first, whether plaintiffs and their two immediate predecessor partnerships satisfied the requirements of section 18(c)(6), and, second, does this provision require the Director to combine the employment experience of plaintiffs with a predecessor other than the second partnership. The recommendation was made that the rate determination and the order denying the application for review be affirmed. Thereafter, the Director of Labor, by his decision, overruled the objections interposed by plaintiffs and adopted the report of his representative. The circuit court of Cook county, as narrated, confirmed the decision of the Director of Labor and quashed the writ of *certiorari* sued out by plaintiffs. This appeal followed.

Plaintiffs contend that section 18(c)(6) required the Director of Labor to combine their employment experience with that of their two predecessor partnerships so as to entitle them to a variable rate of contributions for 1943 and, incidentally, a rate lower than 2.7 per cent. We shall first consider whether the three successive partnerships

were owned by substantially the same interests within the meaning of section 18(c)(6) and, consequently, a single employing unit for the purpose of computing contribution rates. The primary purpose of the Unemployment Compensation Act, as stated in section 1, is to afford relief to those involuntarily unemployed and their families. Amelioration of economic insecurity incident to involuntary unemployment is the objective to be effectuated. The statute itself is thus an exertion of the police power of the State, the legislation is remedial, and is to be liberally construed to the end that its basic purposes may be achieved. (*Oak Woods Cemetery Ass'n* v. *Murphy,* 383 Ill. 301.) The statute has been liberally construed to accomplish the object of providing a degree of security for the unemployed. (*Toplis and Harding, Inc.* v. *Murphy,* 384 Ill. 463; *Smith* v. *Murphy,* 384 Ill. 34; *Peasley* v. *Murphy,* 381 Ill. 187; *Rozran* v. *Durkin,* 381 Ill. 97; *Miller, Inc.* v. *Murphy,* 379 Ill. 524.) The involuntary contributions required to maintain the system of unemployment compensation are not general taxes, and the statute is not a taxing statute. (*Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258.) In short, the Unemployment Compensation Act is not a revenue law and there is no statutory warrant for building up unemployment compensation funds (section 23) beyond the limits necessary to satisfy the possible future demands of the beneficiaries for whom contributions are being currently made. In reality, these funds are trust funds. The construction of the statute, in so far as the liability of an employing unit is concerned, in no way affects the benefits to the unemployed but involves solely a question of rates between the employer and the State.

Determination of whether the three successive partnerships were owned by substantially the same interests must be considered in the light of the foregoing observations. In the present case, the uncontroverted facts disclose that, except for a technical construction of the law, plaintiffs

would be entitled to the relief sought. To be treated as a single unit with their predecessors for the purpose of computing their contribution rate for 1943, plaintiffs must satisfy both clauses (a) and (b) of section 18(c)(6). Defendant concedes that the elements of clause (a) are present. Plaintiffs must also show that after the successive changes in personnel of the partnerships the successor was "owned or controlled" by substantially the same interests as the predecessor employing unit or units. Similar language is used in section 2 (e)(5), and the words "owned or controlled," it has been decided, must be construed to mean "owned and controlled" to render effective the legislative intent. (*Moriarty, Inc.* v. *Murphy, ante,* p. 119; *McGrew Paint & Asphalt Co.* v. *Murphy, ante,* p. 241.) Here, plaintiffs relying upon the literal wording of section 18(c)(6) have not argued the question of control. For this, they should not be penalized, particularly since our opinions in the cases last cited were not filed until after all the briefs had been filed in the present cause. Nor does defendant seek to sustain the judgment upon the ground that the three partnerships were not controlled by substantially the same interests but suggests that plaintiffs waived the point. We think the ends of justice will be better served by considering this branch of the case upon the issue made and argued by the parties, the question of ownership apart from the matter of control, although it would appear obvious that, here, control would necessarily follow if substantially the same interests owned the three partnerships. In doing so, we are constrained to observe that consistency of decision will undoubtedly impel the conclusion, when the issue is properly before us, that the words "owned or controlled," employed in section 18(c)(6) be construed, as in section 2(e)(5), to mean "owned and controlled."

In determining whether the requirements of section 18(c)(6) have been met, both plaintiffs and defendant

have invoked several sections of the Uniform Partnership Act (Ill. Rev. Stat. 1943, chap. 106½,) to support their respective contentions. The representative of the Director of Labor quotes the definition of a partnership, namely, "an association of two or more persons to carry on as co-owners a business for profit," (section 6), portions of sections 8 and 18 and, then, section 25(1): "A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." He then proceeds to reach the erroneous conclusion: "It is clear, therefore, that in the petitioner partnership the six partners are co-owners of the partnership. The three partners were co-owners in the predecessor partnership and it, therefore, can be concluded that the two partnerships were not owned by substantially the same interests." The mere fact that partners own specific partnership property as tenants in partnership does not lead to the conclusion that they are owners in equal proportions of the partnership as a business or economic unit and, certainly not, as an employing unit, within the contemplation of the Unemployment Compensation Act. Of course, there were three separate and distinct partnerships known as Clement Curtis & Co. The decisive question presented is whether these business enterprises were owned by substantially the same interests. In a very real sense, Lindley, Curtis and Marcus, from 1938 through 1943, substantially owned the business enterprise known as Clement Curtis & Co. Not only a common-sense interpretation of the statute itself, but other familiar principles of partnership law, ignored by the hearing representative, support our conclusion. Section 24 states that the property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management. It is true that, as provided in section 25, all the partners own or hold the partnership property as tenants in partnership. By the statement (section 25) that one of the

property rights of a partner is in specific partnership property is meant simply that a partner, subject to any contrary agreement, has an equal right with his copartners to use or possess any partnership property for any proper partnership purpose. The second property right of a partner is his interest in the partnership, namely, his interest in the partnership as a business or going concern. This interest, as declared in section 26, is his share of the profits and surplus and is personal property, regardless of the character of the partnership property. Upon dissolution of a partnership, a partner's interest is no longer in the firm as a going business but in the property remaining after all debts and liabilities to outside creditors have been satisfied. His interest then comprises any debts due him by way of advances, salary or interest, if any, his capital contribution, and his proper share of the remaining assets (profits or surplus). (*Swirsky* v. *Horwich,* 382 Ill. 468; *Lueth* v. *Goodknecht,* 345 Ill. 197; *Cunningham* v. *Cunningham,* 303 Ill. 41; *Morrison* v. *Austin State Bank,* 213 Ill. 472.) The interest of the three junior partners is twelve and one-half per cent of the assets remaining after the payment of all liabilities against the firm. While they own specific partnership property, within the meaning of section 25, the true measure of their interest in the firm property is found in section 26.

If the question presented were whether three partnerships existing contemporaneously, each having as partners Lindley, Curtis and Marcus, and each having the same interests in the three partnerships as in the three involved in this litigation, the business units would be held to constitute but a single employer for the purpose of determining whether section 2(e)(5) is applicable. (*Moriarty, Inc.* v. *Murphy, ante,* p. 119; *McGrew Paint & Asphalt Co.* v. *Murphy, ante,* p. 241.) The same reasons for holding the enterprises, under such circumstances, a single em-

ploying unit, require that they be deemed a single unit under section 18(c)(6).

The situation presented is analogous to the case where the same shareholders own a substantial majority of the stock in each of three corporations, even though the number and names of the minority shareholders are not identical in each case. (*McGrew Paint & Asphalt Co.* v. *Murphy, ante,* p. 241.) Since the law is concerned with substantial ownership of the business unit or enterprise, and not with the technical rules of partnership law or corporation law, there is no valid reason for holding that, under the circumstances present in this case, the three partnerships were not owned by substantially the same interests. A contrary construction would defeat the remedial purpose of section 18(c)(6) to the extent that the vehicle of the partnership form of transacting business is used.

Defendant asserts a distinction exists between (1) proof that plaintiffs and their predecessor were owned by substantially the same interests and (2) proof that the same interests substantially owned each. The distinction sought to be made is one without a substantial difference. We are aware of a recent pronouncement by high authority denouncing the doctrine that because the words of a statute are plain and unambiguous its meaning also is plain as "merely pernicious over-simplification." The courts of this State do not subscribe to this view and where, as here, the words of the relevant statutory provision are singularly free from ambiguity, we decline to render them ambiguous by a tortuous process of construction in the respects urged by defendant, or otherwise. Again, defendant says the questions to be decided are (1) Who are the interests which owned the plaintiffs, (2) Who are the interests which owned plaintiffs' predecessor, and (3) Are these interests substantially the same? Replying, (1) Lindley, Marcus and Curtis own eighty-seven and one-half per

cent of plaintiffs' business enterprise, (2) they owned all of plaintiffs' immediate predecessor, and (3) they are substantially the same.

Defendant places undue stress upon the number of individuals who were members of the successive firms. His supporting argument is dependent upon the word "interests" being considered as synonymous with "persons." Indeed, he says, "The final question for decision is whether or not 'interests' composed of six individuals is substantially the same as 'interests' composed of three individuals." From the facts and circumstances in this record, the answer must be in the affirmative. We fail to see that a different situation would obtain if the senior partners contributed ninety-nine per cent of the capital of the present firm, were entitled to this percentage of profits and subject to the same percentage of losses, and the other one per cent held by one·person or three persons, as here, or even by ten or more persons. The inescapable fact would remain that the firm would be owned by substantially the same interests as owned the predecessor firms, provided, of course, that the senior partners had a majority interest in them. The word "interests" is not synonymous with the term "persons" and "substantially the same interests" does not mean, as defendant argues, "substantially the same persons." Manifestly, if the word "owned" be construed to mean absolute ownership, as defendant further maintains, the purpose of section 18(c)(6) would be rendered nugatory.

Plaintiffs next contend that the Director is not limited in considering as a single employing unit those successive employing units which have been the subject matter of more than one reorganization or technical change in legal identity. On the other hand, defendant insists that in the present case, the application of section 18(c)(6) is limited to the employing units involved in the last reorganization which occurred prior to January 1, 1943. Specifically,

plaintiffs maintain that the employment experience of the first two partnerships is to be combined because the business units were parties to the first reorganization and that the second unit and the third may be combined as the second reorganization. Defendant insists that successive reorganizations were excluded and that section 18(c)(6) is limited in its application to the employing units involved in the last reorganization which occurred prior to the computation of rates. He argues that, since there was no computation of rates prior to 1943, all employers being required to pay at the same rate, namely, 2.7 per cent, section 18(c)(6) applies to successors for whom a rate of contributions is being computed for 1943 or thereafter, and is clearly inapplicable to successors which ceased to exist prior to January 1, 1943. To arrive at this conclusion, the word "a" in the opening part of section 18(c)(6) would have to be construed as meaning "one" and, indeed, "only one." If, however, "a" be construed as "any," there is no restraint upon parties to a first reorganization being deemed a single employing unit for the purpose of computing contribution rates and then considering the second employing unit and the third business unit as parties to a second reorganization and, hence, the three firms deemed a single employing unit for the purpose of computing contribution rates. The article "a" is generally not used in a singular sense unless such an intention is clear from the language of the statute. (1 C. J. S. p. 1; *State* v. *Martin,* 60 Ark. 343.) We agree with plaintiffs that the article "a" refers not to quantity but, instead, to the quality or nature of the changes in·legal identity coming within the contemplation of this section.

Subsection 18(c)(6) was added to the original act in 1941, the purpose being, in part, to reward those employers who have granted security to their employees by stabilizing employment within their places of business. This accords

with the declaration of public policy in section 1 of the statute. To acquiesce in the Director's interpretation would be to grant an "incentive for stabilization of employment" to some employers and to deny it to others merely because of the numerical differences in the number of technical changes in legal identity. This, the General Assembly sought to avoid. Changes in personnel of a partnership, especially a large law firm, a brokerage concern, or an accounting firm are constantly occurring, not only by reason of deaths, resignations and additions, but, it may be observed, at the present time, by voluntary departures from these business enterprises to enter the armed services of the United States. In the great majority of such instances, the partnership may well be owned and controlled by the same interests after these changes as before, and they are, within the purview of the Unemployment Compensation Act, but technical changes in organization, and the employing units are not to be denied the benefits of section 18(c)(6) by reason of the fact that there has been more than one change.

To support the conclusion that section 18(c)(6), as it formerly obtained, did not recognize the combined experience of employing units involved in successive reorganizations, defendant has recourse to an amendment to section 18(c)(6), effective July 1, 1943: "Whenever two or more such reorganizations occur in succession, all the employing units which are parties to or the subject of the last reorganization, if any, which took place prior to January 1, 1943, and all the employing units which are parties to or the subject of any such successive reorganization which occurred on or after January 1, 1943, shall be considered and treated as a single employing unit for the purposes of determining contribution rates, if the Director finds that both conditions (a) and (b) above exist with respect to each reorganization in the series of successive reorganizations." Ill. Rev. Stat. 1943, chap. 48, par. 234, p. 1642.

Defendant maintains that this new paragraph, for the first time, allows employing units involved in successive reorganizations to be treated as a single employing unit, and then only as far back as the last reorganization occurring prior to January 1, 1943. The premise upon which this argument rests is fallacious. The effect of this additional provision is to incorporate into the statute, effective July 1, 1943, defendant's interpretation of section 18(c)(6) as it stood prior to the amendment. In short, if defendant's contention be adopted, the amendment served no purpose, but was merely declaratory of the law already in existence. The presumption is, however, that the amendment was intended to change the law. (*United States* v. *Bashaw,* 50 Fed. 749.) As pertinently observed in *Lawrence* v. *People ex rel. Foote,* 188 Ill. 407, "The interpretation of a prior act, or the intention thereof, may be ascertained by the language of subsequent acts of the same law-making body." Section 18(c)(6) does not reasonably admit of the construction that only a single reorganization was to be considered. Our conclusion is fortified by the fact that clauses (a) and (b) refer to "predecessor employing unit or units." It is true that under the amendment the three successive partnerships involved in this cause could not be treated as a single employing unit, because the first as well as the second reorganization was consummated before January 1, 1943. Prior to the addition of the amendment there was, however, no statutory bar to treating them as a single employer. Since successive reorganizations were provided for in 1941, the purpose of the amendment of 1943 must necessarily have been to exclude successive reorganizations, to the extent stated, from the benefits accruing to the consideration of several successive business enterprises owned by substantially the same interests as a single employing unit.

The judgment of the circuit court of Cook county is reversed and the cause remanded, with directions to quash the

520

record of the defendant and, pursuant to section 25(a)(2) of the Unemployment Compensation Act, to refer the cause to the Director of the Department of Labor for the purpose of determining plaintiffs' rate of contribution in 1943, in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*