(No. 28241.—

L. R. BILLETT *et al.,* doing business as Kebbon, McCormick & Co., Appellants, *vs.* ROBERT L. GORDON, successor to Francis B. Murphy, Director of Labor, Appellee.

*Opinion filed January 17, 1945—Rehearing denied March 20, 1945.*

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, (JOHN J. FAISSLER, and SIDNEY M. PERLSTADT, of counsel,) all of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal by the plaintiffs, who are copartners doing business as Kebbon, McCormick & Co., from a judgment of the circuit court of Cook county, quashing a writ of *certiorari* sued out by them to review the decision of the Director of Labor, determining the rate at which plaintiffs were liable for contributions under the Illinois Unemployment Compensation Act for the year 1943.

The Director of Labor determined the contribution rate of the partnership for the year 1943 to·be 2.7 per cent, and

gave notice thereof to the partnership. The partnership protested this order of the Director and requested a hearing. The hearing, before a duly authorized representative of the Director of Labor, was held on June 29, 1943. The protesting partners made the contention there, which they later made before the circuit court and now make to this court, that, under the provisions of section 18(c)(6) of the Unemployment Compensation Act, they are entitled to the benefits of the employment experience of Stern, Wampler & Co., Inc., a corporation, whose business and assets were transferred to the partnership on February 28, 1942. It was stipulated by the Director of Labor and the partnership that the corporation was an employer as defined by the act and liable for contributions for the period from June 1, 1938, to February 28, 1942; that the partnership was an employer as defined by the act and liable for the payment of contributions for the period commencing February 28, 1942, and thereafter; and that if the partnership and the corporation were deemed to be a single employing unit for the purposes of computing contribution rates within the meaning of section 18(c) of the act, the contribution rate of the partnership for the year 1943 is 0.5 per cent.

The Director's representative filed his report finding that the partnership, Kebbon, McCormick & Co., immediately after the transfer to it of the assets and business of the predecessor corporation, Stern, Wampler & Co., Inc., was neither owned nor controlled by substantially the same interests as the predecessor corporation, and recommending that the rate determination be affirmed. Objections were interposed to this report and recommendation of the Director's representative. These objections were overruled and the report of the representative was adopted as the decision of the Director of Labor. The circuit court, on *certiorari,* confirmed the decision of the Director and this appeal followed. The question presented for decision is

whether, for the purpose of determining appellants' contribution rate for the year 1943, the partnership, Kebbon, McCormick & Co., is to be treated, under the provisions of section 18(c)(6) of the Unemployment Compensation Act, as a single employing unit with the predecessor corporation, Stern, Wampler & Co., Inc.

Section 18(c) of the act, as amended in 1941, and in force January 1, 1943, (Ill. Rev. Stat. 1941, chap. 48, par. 234,) provides that for each calendar year commencing after December 31, 1942, the contribution rate of each employer subject to the act shall be determined in accordance with the directions set forth therein. This section of the act further states that "no employer's rate shall be less than 2.7 per cent for any calendar year unless throughout the three consecutive calendar years immediately preceding such year, some individual could, if unemployed and eligible, have received benefits on wages from such employer." Under section 4 of the act (Ill. Rev. Stat. 1941, chap. 48, par. 220,) an eligible individual is entitled to benefits during a "benefit year" computed on the basis of wages earned by him under the act during his "base period." Section 2(i) of the act (Ill. Rev. Stat. 1941, chap. 48, par. 218,) defines "base period" to mean "the twelve consecutive month period ending December 31, immediately preceding the first day of a benefit year." It therefore follows that employers who were not liable for contributions under the act in each of the preceding five years were required to contribute at the standard rate of 2.7 per cent during the year 1943.

Section 18(c)(6), upon which appellants rely, was added to the original act in 1941, and, so far as pertinent to the issues here involved, provides as follows: "For the purposes of this subsection two or more employing units which are parties to or the subject of a merger, consolidation, or other form of reorganization effecting a change in legal identity or form shall be deemed to be a single em-

ploying unit for the purpose of computing contribution rates, if the Director finds that (a) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto, and (b) immediately after such change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units."

Stern, Wampler & Co., Inc., was a corporation dealing in investment securities, with offices at 231 South La Salle street, Chicago, and 40 Wall street, New York. Its outstanding capital stock consisted of 14,200 shares of preferred stock of the par value of $10 a share and 15,050 shares of common stock of the par value of $5. Shortly before February 28, 1942, a partnership was formed, composed of L. R. Billett, J. C. Connell, Richard A. Kebbon, John C. Marshall, D. Dean McCormick and Harry N. Pritchard, for the purpose of acquiring the assets and business of the corporation. The name of this partnership was Kebbon, McCormick & Co. Billet, Connell, Kebbon and Pritchard were stockholders and directors of the corporation. Marshall was also a stockholder, but not a director. On February 28, 1942, of the total outstanding stock of the corporation, 8821 shares of the preferred and 9350 shares of the common were owned by persons other than members of the partnership. The five partners who were stockholders in the corporation owned a total of 5700 shares of the common stock and 5379 shares of the preferred, their aggregate stock ownership amounting to 37.87 per cent of the total outstanding stock, both preferred and common. February 28, 1942, the partnership purchased from the corporation for cash all of the business and assets of the corporation of every kind and character, except some inconsequential securities. The cash, representing the purchase price, and the securities which the partnership did not take over were distributed among the stock-

holders of the corporation. The partners who, as stockholders of the corporation, received cash from the purchase, contributed that cash to the partnership. Thereafter the corporation transacted no further business and was dissolved about the middle of March, 1942. Notices were sent to customers and others and also printed in the newspapers announcing the formation of the partnership, Kebbon, McCormick & Co., to continue the investment business formerly conducted by Stern, Wampler & Co., Inc. There was no interruption in the business, which was continued by the partnership at the same locations in Chicago and New York. All employees of the corporation were retained by the partnership, and the partnership succeeded to all the business of the corporation. Appellee concedes that the partnership and the corporation were, on February 28, 1942, involved in a reorganization within the meaning of section 18(c)(6) of the Unemployment Compensation Act. Appellee also further concedes that the conditions of clause (a) of said subsection have been met. However, in order for appellants to obtain the benefit of the employment experience of the predecessor corporation in computing their contribution rate for 1943, the requirements of clause (b) of said subsection that "immediately after such change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units" must also be satisfied. (*Lindley* v. *Murphy,* 387 Ill. 506.) This makes it incumbent upon appellants to show that on February 28, 1942, the corporation, Stern, Wampler & Co., Inc., and the partnership, Kebbon, McCormick & Co., were "owned or controlled" by substantially the same interests.

The five members of the partnership who were stockholders of the corporation owned 81.651 per cent of the partnership and 37.87 per cent of the capital stock of the corporation, both preferred and common. It is plain, beyond the possibility of doubt, that the partnership and

the corporation were not owned by substantially the same interests. Appellants contend that either continuity of ownership or continuity of control should be held to satisfy the provisions of said clause (b) of section 18(c)(6) of the act. Language very similar to that here involved in section 18(c)(6) is contained in section 2(e)(5) of the act, which provides that two employing units may be united and treated as a single unit, if they are "owned or controlled" by the same interests. The construction of the language in section 2(e)(5) has heretofore been before this court, and it has been decided that the words "owned or controlled" in that section must be construed to mean "owned and controlled" and that neither ownership nor control is, alone, sufficient. (*Moriarty, Inc.* v. *Murphy*, 387 Ill. 119; *McGrew Paint & Asphalt Co.* v. *Murphy*, 387 Ill. 241.) While the words "owned or controlled" as used in section 18(c)(6) have never been construed by this court, our views on the subject were plainly expressed in *Lindley* v. *Murphy*, 387 Ill. 506, wherein we stated that "consistency of decision will undoubtedly impel the conclusion, when the issue is properly before us, that the words 'owned or controlled,' employed in section 18(c)(6) be construed, as in section 2(e)(5), to mean 'owned and controlled.'" We think this is the proper construction to be applied to section 18(c)(6). If the partnership and the corporation were existing contemporaneously, the five partners who own 81.651 per cent of the partnership also owning 37.87 per cent of the corporation's capital stock, the partnership and corporation could not, in harmony with the holdings of the *Moriarty* and *McGrew* cases above cited, be held to constitute a single employer. The same reasons for holding the corporation and the partnership, under section 2(e)(5), to be separate employers require that they be deemed separate employers under section 18(c)(6). *Lindley* v. *Murphy*, 387 Ill. 506.

Both appellants and appellee have discussed at length the character of control required under section 18(c)(6) and have also argued extensively appellants' contention that the four partners, Billett, Connell, Kebbon and Pritchard, were a majority of the "active" directors of the corporation and, as such, in control of the corporation, and their further contention that Billett, as "managing partner," of the partnership and as "chief executive officer" of the corporation, was in direct control of both the partnership and the corporation. Since the common ownership necessary to bring this case within the application of section 18(c)(6) is lacking, no consideration need be given to the matter of control.

It is also suggested by appellants, in argument, that the words "owned or controlled" in section 18(c)(6) require a construction different from the construction of the same words in section 2(e)(5) of the act, and that the owner of a minority of the shares of stock of a corporation, if sufficient in amount to give him actual control thereof, owns the corporation within the terms of section 18(c)(6) of the Unemployment Compensation Act. We are unable to see the force of this argument. Employers are entitled to consistency in the interpretation of the Unemployment Compensation Act. Where the same words appear in a section imposing liability and in a section determining contribution rates, the words should be given consistent interpretations.

The judgment of the circuit court, which confirmed the decision of the Director of Labor, is correct, and it is affirmed.

*Judgment affirmed.*