DOBBS v. BOARD OF COUNTY COM'RS OF OKLAHOMA COUNTY et al.

No. 35947.   May 26, 1953.

*257 P. 2d 802.*

F. M. Bookstore, Oklahoma City, for plaintiff.

Everett E. Cotter, Frank Miskovsky, V. P. Crowe, Wayne Bayless, and Granville Scanland, by Nathan S. Sherman, Oklahoma City, for defendants.

HALLEY, C.J.   Betty O. Dobbs, a resident taxpayer of Oklahoma county, attacks the constitutionality of H. B. No. 646 of the 1953 Legislature, which became effective March 24, 1953, and prays that we prohibit the board of county commissioners of Oklahoma county from appointing a second county judge.

The above law amends sec. 131(a), Title 19, O.S. 1951, and provides addi-

tional county judges in all counties in Oklahoma having a population of 300,000 or more, as shown by the last Federal Decennial Census, and which further provides that any resident taxpayer of a county having that population may contest the constitutionality of the Act by original action in this court.

It is admitted that Oklahoma county has the required population to justify the appointment of an additional county judge, if H.B. No. 646 is held valid. An amended petition was filed showing that the board of county commissioners of Oklahoma county did, on March 24, 1953, appoint William A. Berry as an additional county judge for Oklahoma county and he is joined herein as a party defendant with the county commissioners who made the appointment.

The petition alleges that H. B. No. 646 is ineffective because it violates sec. 11, article VII of the State Constitution.

The pertinent portion of H.B. No. 646 is sec. 1, which is as follows:

"(A) At the general election to be held in November, 1948, and each two (2) years thereafter, there shall be elected in each county of the State of Oklahoma, a County Judge, provided however in each County having a population in excess of Three Hundred Thousand (300,000) as shown by the last preceding regular Federal Decennial Census, there shall be elected an additional County Judge, and in all counties of the State of Oklahoma, a County Attorney, a Court Clerk and a County Sheriff, who shall hold office for a term of two (2) years beginning, except that of the County Judge, as provided in Section 11, Article VII, Constitution of Oklahoma, on the first Monday in January following their election, and until their successors are elected and qualified."

Section 11 of article VII of our Constitution provides:

"There is hereby established in each county in this State a County Court, which shall be a court of record; and, at the election to ratify this Constitution, there shall be elected in each county a County Judge, who shall hold his office until the close of the day next preceding the second Monday in January, nineteen hundred and eleven; and thereafter the term of office of the County Judge shall be two years, and he shall be elected at each biennial general election. The county judge shall be a qualified voter and a resident of the county at the time of his election, and a lawyer licensed to practice in any court of record of the State. The county judge shall be judge of the county court."

Section 2 of article XVII provides:

"There are hereby created, subject to change by the Legislature, in and for each organized county of this State, the offices of Judge of the County Court, County Attorney, Clerk of the District Court, County Clerk, Sheriff, County Treasurer, Register of Deeds, County Surveyor, Superintendent of Public Instruction, three County Commissioners, and such municipal township officers as are now provided for under the laws of the Territory of Oklahoma, except as in this Constitution otherwise provided."

Petitioner points out that in Nichols v. Levy, 151 Okla. 245, I P. 2d 766, this court had before it a similar law, being H.B. No. 131, effective March 5, 1931, providing for two county judges in a county having a population of 220, 000, and held the same unconstitutional and void.

The principal objective of the Act here attacked is the same as that of the 1931 Act. We have examined carefully the opinion in the Nichols v. Levy case, decided by this court in 1931, and also the two dissenting opinions, and agree that if H.B. No. 646 is upheld it will be necessary to overrule the decision in Nichols v. Levy. In that case it was agreed that the real issue was: "Does our Constitution prohibit the Legislature from providing for more than one judge for the county court regardless of the size of the county or the amount of court work?" Such is clearly the real issue before us.

The defendants contend that the opinion in the Nichols v. Levy is erroneous in the following particulars:

(a) The failure to sustain the constitutionality of an Act of the Legislature in the absence of clear prohibition and the limitation in the Constitution of the power of the Legislature to enact the law in question.

(b) The decision failed to consider certain pertinent provisions of the Constitution.

(c) It failed to consider the Bill of Rights expressed in sec. 6, Article II, of our Constitution, and,

(d) Their reasoning in the opinion is fallacious.

The above contentions are treated together in the brief of the defendants, and since Nichols v. Levy is the only case relied upon by plaintiff, we have considered them together, with reference to the decision which must be overruled if H.B. No. 646 is to be sustained. That decision is based principally upon the provisions of sec. 11, art. VII, supra, which provides for the establishment in each county of "a county court," and that there shall be elected in each county "a county judge" who shall hold "his" office until a time fixed, and that thereafter the term of office of "the county judge" shall be two years, and that "he" shall be elected each biennial election. The qualifications of "the county judge" are prescribed and he is required to be "a lawyer".

The original jurisdiction of the county court is fixed by sec. 12, art. VII, "until otherwise provided by law"; that sec. 10 of the same Article, a district court, "or any judge thereof" shall have power to issue writs, while sec. 12 provides that the county court, "or judge thereof," shall also have such power.

It was pointed out that while article VII provides for changes of certain sections of law, there is no such provision relative to changing the number of county judges. The provision fixing the jurisdiction of the county court contains a clause that the same may be changed by the Legislature, as has been done many times.

It was also pointed out that district judges might be sent into other counties outside their district to try cases, but no such provision was made as to county judges.

The opinion in Nichols v. Levy is very well summarized in the body of the opinion, on page 248, 151 Okla. Reports, wherein the court expressed disagreement with a decision handed down by the Supreme Court of Arkansas, in the following language:

"We cannot follow the reasoning of the Supreme Court of Arkansas in State v. Martin, 60 Ark 343, 30 S.W. 421, 28 L.R.A. 153, to the effect that the articles used in a constitutional provision are too indefinite to define or limit the number of judges which may be provided by legislation. We cannot hold that 'a county judge', 'the county judge', 'his election', and 'a lawyer' refer to two or more judges. As well might it be said that the provision in the Constitution for 'a Governor' would authorize a legislative enactment for two Governors. The illustration used by the plaintiff is that an agent authorized to buy 'a horse' would not thereby be authorized to buy two horses."

Before discussing certain phases of the Nichols v. Levy decision, we shall call attention to certain other well established rules governing constitutional interpretation. It is pointed out by defendants that a state Constitution is an instrument of limitations in the powers of the state government, while the Federal Constitution is a limited grant of power. Our Legislature is supreme, except as limited by the express provisions of our state Constitution. If there is any doubt as to the validity of an act of the Legislature, the doubt must be resolved in favor of the constitutionality of the Act of the Legislature. The rule is aptly expressed in Finerty v. Williams, 81 Okla 10, 196 P. 709, wherein it is stated:

"All powers not specifically granted to the Congress of the United States or

arising by implication therefrom are reserved to the states or the people thereof; hence the Legislature does not get its power from the Constitution of this state. The people of the state have, through its Constitution-makers, the right to limit the power of the state Legislature, and any limitation on the power of the Legislature should arise only upon specific declarations and should be strictly construed against implied limitations and any doubt arising should be resolved in favor of the power of the Legislature. See Fletcher v. Peck, 6 Cranch 87, 3 L. Ed. 162; Golden v. Prince, 3 Wash. C.C.P. 313, Fed. Cas. No. 5,509; Alabama & Florida Ry. Co. v. Burkett, 42 Ala. 86-87."

In Herndon, Judge, v. Anderson, 165 Okla. 104, 25 P. 2d 326, in adopting the language of the Supreme Court of Missouri, it was said:

"When the validity of a statute is drawn in question, the court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The General Assembly is presumed to have been as careful to observe the requirements of the constitution in enacting the statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until its invalidity is made to appear beyond a doubt." (State ex rel. v. Aloe, 152 Mo. 477, 54 S.W. 496.)

If we follow the foregoing rule of construction we shall consider other pertinent provisions of our Constitution in addition to those relied upon by the plaintiff.

Sec. 6, art. II, provides that:

"The courts of justice * * * shall be open to every person, and speedy and certain remedy afforded for every wrong ***; and right and justice shall be administered without sale, denial, delay or prejudice."

In order to meet the foregoing mandate of our Constitution our Legislature has provided this court with a Supreme Court Commission, and Referees. It has created superior courts; and courts of common pleas in some of our cities,

and additional district courts, and increased the number of district judges from the 22 -originally provided for to 42.

Section 36, art. V, expressly gives the legislative branch of our government wide authority in the following language:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

While new conditions, such as the increase of population, have increased the work of our courts, it does not justify an illogical or unlawful interpretation of our Constitution. We think such matters may properly be considered in arriving at the intention of the framers of our Constitution and those who voted for its adoption. It is true that the constitutional convention did not adopt the Constitution, but we should remember that they not only prepared it but were an influential part of the mass of people to whom it was submitted and by whom it was adopted as the supreme law of the state.

The right of the Legislature to establish courts, judicial offices and other appropriate agencies of the state government by general law has been upheld by this court (Lowden v. Oklahoma County Excise Board, 186 Okla. 706, 100 P. 2d 448; Crawford v. Smith, 162 Okla. 165, 19 P. 2d 964; Roberts v. Ledgerwood, 134 Okla. 152, 272 P. 448) and the limitations placed upon the Legislature by sec. 46, article V, with respect to the local and special laws, does not prohibit the Legislature from regulating by general law "affairs of counties", "changing of county seats", or "creating offices * * * in counties".

In sec. 1, art. VII, creating the judicial powers of the state, we find no distinction made between the district court, justices of the peace, and munic-

ipal courts, and no distinction is made as to the number of judges who might serve as district judges, county court judges or judges of other courts thereby created. The only limitation being that such courts be inferior to the Supreme Court.

In Burks v. Walker, 25 Okla. 353, 109 P. 544, Mr. Justice Hayes, after quoting sec. 2, art. VII, said:

"* * * Two different judicial systems had theretofore prevailed within the territory now constituting the state. The dockets of all the courts were badly crowded, and it was impossible to foretell just what division of jurisdiction between the various courts would enable the courts of the state to dispose of the business already accumulated upon the dockets and that might reasonably be expected to arise."

If we accept the view of the plaintiff and the decision in Nichols v. Levy, it might be said that the Legislature was granted full authority to carry out the mandate of sec. 6, art. II, supra, which provides for speedy justice without delay to all of our citizens, with the sole exception of those whose controversies and affairs fell within the jurisdiction of county courts. The administration of estates of decedents is vested exclusively in county courts. Such cases are as certain as death itself and those interests are surely entitled to be heard promptly in accordance with the provisions for an orderly administration and settlement of estates.

Sec. 7, art. V, is as follows:

"The reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, propose or pass any measure, which may be consistent with the Constitution of the State and the Constitution of the United States."

Is there in the Constitution any express provision limiting the number of county judges, or prohibiting the Legislature from providing by general law for the creation of an additional county judge where it is found necessary in order that the county court may grant speedy justice without delay? We find no such provision. Sec. 46 prohibits special laws on certain subjects. One is "creating offices or prescribing the powers and duties of officers in counties, cities," etc. But this section does not prohibit, but, in fact, grants, full authority and power to enact such laws upon the very subjects mentioned by general acts. Sec. 1, art. VII, is as follows:

"The judicial power of this State shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, District Courts, County Courts, Courts of Justices of the Peace, Municipal Courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

At statehood the population of Oklahoma county was 55,849. In 1950 it was 325,352. The number of probate cases filed in the year ending January 1, 1908, was 127. In the year ending January 1, 1950, there were 1,546 cases, an increase of 1,500%. Sanity hearings have increased almost as much, and juvenile hearings, beer licenses and other duties have increased tremendously.

The county judge must now make application for medical care for crippled children, issue certificates to ex-servicemen to permit peddling without a license, supervise the marriage license bureau, issue beer, pool and billiard hall licenses, authorize cashing checks for disabled pensioners and of deceased pensioners by proper persons.

In Nichols v. Levy it was held that:

"We cannot hold that 'a county judge', 'the county judge', 'his election', and 'a lawyer' refer to two or more judges."

Despite the ruling on the meaning of sec. 11, art. VII, we find that sec. 9 of article VII, relative to judicial districts for district judges, provides in substance that: the state shall be divided into 21 judicial districts and the voters in each district shall elect "a judge of the district court" except in the 13th

district two judges shall be elected and that the district judge shall be a citizen of the United States and a resident of the territory for two years and of his district at least one year prior to his election. The term of office of the district judge shall be four years, and at the time of his election he shall have reached the age of 25 years. If the judge elected in any district is ill or unable to preside, the Chief Justice may designate any district judge in the state to serve in lieu of the judge elected from the district. It was further provided that if public business shall require it, the Chief Justice may appoint a district judge to hold court in any district and that two or more district judges may sit in any district at the same time.

Sec. 12, art. VII, fixes the jurisdiction of county courts and among other things provides that in the absence of the district judge from his county, or his disqualification, the county court, or judge thereof, shall have power to issue writs of injunction in matters about to be brought or pending in the district court and to issue writs of injunction, mandamus, and all writs necessary to enforce the jurisdiction of county courts. It is further provided that when a county judge is disqualified in any case pending in the county court, a judge pro tempore may be selected in the same manner provided for the election of judges pro tempore in the district court.

It is nowhere provided in the last section mentioned that the Chief Justice may assign a county judge from the county for which he was elected to any other county in the state. The reason for this is doubtless because district judges are paid by the state while county judges are county officers and are paid by the county they serve.

The majority opinion in Nichols v. Levy refused to follow the holdings of the Supreme Court of Arkansas. In State v. Martin, 60 Ark. 343, 30 S.W. 421, 28 L.R.A. 153, which is more nearly in point than any other decision existing at the time it was rejected by this court. The syllabus expresses the holdings in that case as follows:

"Act Feb. 8, 1895, providing for an additional judge for the Sixth judicial circuit, and for the division of that circuit, does not violate Const. art. 7, §13, providing for the division of the state into judicial circuits, and for the election of 'a judge' for each circuit; nor section 1, which vests the judicial power of the state in one supreme court, in circuit courts, etc., by establishing a new office, in which judicial power is vested."

The Arkansas Constitution provided that the state should be divided into circuits and for each circuit "a judge" should be elected. It was contended, as here, that use of the word or letter "a" before the word "judge" prohibits the Legislature from providing more than one judge for each circuit. The Legislature has passed an act providing for two circuit judges for the Sixth Circuit. In the body of the opinion it was said, at page 425, 30 S.W.:

"* * * But we are of the opinion that this grammatical particle 'a' whose office is frequently only to preserve euphony in the use of words and structure of sentences, and whose force often depends upon the mere accident of accentuation, was not used, nor was it ever intended to be used, by the framers of our organic law, so as to obstruct and partially defeat the exalted purpose for which the circuit courts, the 'great residuum of all jurisdiction', were created, namely, the speedy administration of public justice. * * *"

The decision in State v. Martin, supra, was approved by the Supreme Court of Iowa in the First Trust Joint Stock Land Bank of Chicago v. Armstrong, 222 Iowa 425, 269 N.W. 502, in which the court stated in the syllabus:

" * * * word 'an' meaning any one of a great number * * *"

In Lindley v. Murphy, 387 Ill. 506, 56 N.E. 2d 832, the Supreme Court of

Illinois cites the Martin case, supra, with approval on page 838 and stated:

"* * * The article 'a' is generally not used in a singular sense unless such an intention is clear from the language of the statute (1 C.J.S. A p. 1; * * *) We agree with plaintiffs that the article 'a' refers not to quantity but, instead, to quality or nature. * * *"

It would have been normal and reasonable to have provided for "one county judge" for each county court had the framers of the Constitution desired and intended to limit the number of county judges to one for each county.

In sec. 9, art. V, the words "one" and "two" are used in describing the membership and term of offices of the state senators.

In sec. 10(d), art. V, the words "one" and "two" are freely used relative to representatives. We find that in sections 12, 13, 14, 15, and 16, of article V, the words "one" and "two" and "three", in providing for legislative districts and the number of representatives to be elected, are used numerous times. These sections of the Constitution indicated clearly that when the constitutional convention wanted to expressly limit the number of officers it used the words meaning the exact number it intended.

We think the opinion in Nichols v. Levy overlooked certain cardinal rules of construction. In Capitol Steel & Iron Co. v. Fuller, 206 Okla. 638, 245 P. 2d 1134, it is stated in the first syllabus:

"A constitutional amendment should be construed in the light of its purpose and given a practical interpretation so that the plainly manifest purpose of those who adopted it may be carried out."

In Re Flynn's Estate, 205 Okla. 311, 237 P. 2d 903, it is said:

"The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith."

In 11 Am. Jur. Constitutional Law, sec. 51, it is said in regard to the flexibility of a Constitution:

"A Constitution usually announces certain basic principles to serve as the perpetual foundation of the state. It is not intended to be a limitation on its healthful development nor an obstruction to its progress. And accordingly, the courts are not inclined to adopt such a technical or strained construction as will unduly impair the efficiency of the Legislature to meet responsibilities occasioned by changing conditions of society. * * *"

It is suggested that, in the interest of stability and permanence in government, an interpretation of the Constitution by this court that has stood for more than 20 years should not be overruled where the facts are similar. There is some merit in this contention in view of the fact that different interpretations may result in confusion and possibly injustice to those who have relied upon a seemingly well established rule.

However, if we are convinced that the court has placed an erroneous interpretation upon some phrase of our basic law, it must be admitted that it is our duty to correct such error. We have done it before as well as other state courts and the Supreme Court of the United States. The passage of time should not be allowed to serve as a barrier to a correct interpretation.

The question of the right of our Legislature to enact a general law providing for more than one county judge in counties having more than 300,000 population has come before this court again, largely because of the increase of population in some of our counties, but also because our county courts have been burdened with additional jurisdiction until it is obviously impossible for a single county judge in our more populous counties to administer speedy justice without delay.

Our Constitution, sec. 12, art. VII, provides that where county judges have disqualified a county judge pro tempore

may be selected in the same manner as a district judge under similar circumstances. It is well known to the attorneys in our most populous counties that a temporary county judge is selected to serve for as much as two weeks each year while the overburdened regular county judge is given a brief rest or vacation. As we construe the opinion in Nichols v. Levy, supra, such action would be a violation of the Constitution in that there would be two county judges for that county during that period. We cannot believe that the framers of our Constitution intended to impede justice by limiting each county to one county judge, or that the people who voted for its adoption ever thought that the Legislature was not given authority to increase the number of county judges to meet the urgent needs, arising from an increase in population and the additional burdens placed upon the county judges by increased jurisdiction due to the complexities of modern society. They were not so short-sighted as to think that at no time would the probate business of the court become so great as to be impossible for one man to handle.

We find no express limitations in our Constitution upon the power of the Legislature to enact a general law authorizing the appointment and election of two county judges in counties having a population in excess of 300,000. The decision in Nichols v. Levy is hereby overruled and H.B. No. 646 is held to be constitutional and the acts of the defendants, county commissioners of Oklahoma county, in electing a second county judge is approved. The writ of prohibition prayed for by the plaintiff is denied.

JOHNSON, V.C.J., and WELCH, DAVISON, ARNOLD, and WILLIAMS, JJ., concur. CORN, O'NEAL, and BLACKBIRD, JJ., dissent.

DAVISON, J. (specially concurring). In my opinion the dissenting views of Mr. Justice Hefner, in the case of Nichols et al. v. Levy, 151 Okla. 245, 1 P. 2d 766, should have been adopted in that case. The logic and reasoning in the Hefner dissent is, to me, unanswerable. Since the above mentioned dissent was written, several states, including Iowa and Illinois, have followed the general thought contained therein. The majority opinion in the Levy case, supra, has never been followed.

While I have always been of the opinion that we should apply the rule of stare decisis wherever possible, yet, when we find that an earlier opinion has been proven to be unsound and we are thoroughly convinced of its unsoundness, we should correct the error at the earliest possible date.

I am authorized to state that Mr. Justice WELCH concurs in the foregoing views.

ARNOLD, J. (specially concurring). The effective block placed in the highway of the administration of justice by Nichols v. Levy (1931) 151 Okla. 245, 1 P. 2d 766, has been removed. The widows, the orphans, the insane, the halt and the blind —in fact, all residents of this state whose problems fall within the exclusive original jurisdiction of the county court of Oklahoma county may have, as intended, justice *without delay*.

Our fundamental rights to justice, equality, freedom and the pursuit of happiness did not come from the Congress, the Legislature, or the judiciary. We are *endowed* with these absolutely inalienable rights—they came from the Creator of us all, God. This is plainly recognized by our Constitutions.

All legislative power must come from the people—sovereign because *endowed* with those fundamental rights. The ultimate purpose of all government is to vouchsafe and keep secure the exercise of these rights.

Recognizing the importance of these sovereign rights, as did Patrick Henry and the President of the United States lately when he so earnestly approved

the immortal statement, "Give me Liberty or give me Death", the people vested in the Legislature power to legislate on all rightful subjects not specifically withheld. Article 5, §36 of our state Constitution provides:

"The authority of the Legislature shall extend to all rightful subjects of. legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject * * * whatsoever."

Though this is true of most state Constitutions, the reverse is true of the Constitution of the United States. The Congress is restricted in its legislative powers to those specifically granted. Article 1, section 1, of the Constitution of the United States provides:

"All legislative powers *herein granted* shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Here you have the reason for the universal rule that restriction of the legislative power of our State Legislature must be directly and plainly spoken in the Constitution and the universal rule that any such restriction may never be manufactured by implication.

The courts belong to all the people. The people of Tupelo, Mississippi, have the same rights before the county court of Oklahoma as do the people of Tupelo, Oklahoma, the residents of Oklahoma county, and all other residents of this state. Everybody is entitled to justice and for this reason our Constitution provides the power in these unmistakable words:

"The judicial power of this State shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, District Courts, County Courts, Courts of Justices of the Peace, Municipal Courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law." Article 7, §1;

and then the adopters *told* the Legislature and the judges:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Article 2, §6.

How can this plain mandate of the Constitution be carried out if this court *by implication,* contrary to all judicial precedent, restrict the Legislature?

Under the plainly expressed purpose and mandate of the Constitution above noted, *nothing* should be allowed to stand in the way of the Legislature in the proper exercise of its power and *duty* to provide adequate courts to administer justice to all people promptly. We have heretofore held that where a mandate of the Constitution comes in conflict with a specific restriction the mandate overrides the restriction and must be carried out. (Smartt, Sheriff, v. Board of County Commissioners, Craig Co., 67 Okla. 141, 169 P. 1101, L.R.A. 1918C, 313; School Dist. No. 62, Craig Co. v. School Dist. No. 17, Craig Co., 143 Okla. 136, 287 P. 1035.) There there was a specific restriction. Here there is none.

It is conceded there is no specific limitation on the Legislature to create county courts. The Levy case, supra, is based entirely on faulty interpretation and implication and overlooks some pertinent and significant provisions of our Constitution. When adopted, as now, there was no reason or judicial *precedent* to support it. It is wrong, always has been wrong, but has effectively prevented the prompt administration of justice in this state. The Legislature determined in 1931 the need for another county judge in Oklahoma county and has now again determined the need of it. This is its exclusive duty and its determination will not be disturbed by appellate courts. Here the need is conceded.

In view of all the circumstances it is the positive duty of this court to over-

rule Nichols v. Levy, supra. Otherwise, prompt justice commanded by the Constitution will continue to be denied only on the flimsy excuse that consistency should be maintained. Consistency would be of no help here, but the administration of justice would.

Judges, lawyers, preachers of the gospel, and teachers unashamed of their organizational affiliations are agreed that there is little doubt that we are now facing a threat to our democratic way of life, greater, perhaps, than any we have experienced in our national history. This common danger has aroused a united will to defend our institutions. Something more, however, than a mere enthusiasm for democracy must animate its defenders or they will fail. The ultimate survival of our ideal will depend primarily on the strength of its basic institutions and the confidence of its citizens in them.

"Jesus said to him, 'No one who puts his hand to the plough, and then looks back, is fitted for the Kingdom of God.' "

—Luke 9:62

O'NEAL, J. (dissenting). For the reasons stated in the majority opinion in Nichols v. Levy, 151 Okla. 245, 1 P. 2d 766, I respectfully dissent.

BLACKBIRD, J. (dissenting). I respectfully dissent to the opinion of the majority of my associates, and my most compelling reasons for so doing are fully considered and set forth in Nichols v. Levy, 151 Okla. 245, 1 P. 2d 766, which has stood the test of time as a precedent in this jurisdiction for approximately 22 years.

In the 5th paragraph of the majority opinion's syllabus, it is recognized that such a precedent should stand unless erroneous, but in the body of the opinion it is not established, on the basis of any sound or valid principle, that the Nichols decision is erroneous.

The controlling reason for enlarging the plain wording of the Constitution to authorize the Legislature to create more than one county judge in a single county, as is done in the majority opinion, seems to be that of necessity. Repeated reference is made to the Legislature's continued additions to the original duties of a county judge with the inference that, in the more populous counties, like Oklahoma county, it has become almost humanly impossible for one man to discharge them. To me, this is no valid reason for countenancing, authorizing or approving a direct violation of the Constitution. In my opinion, to construe the Constitution contrary to its plain wording, in any case, sets a very dangerous precedent and creates an "opening wedge" which may quite conceivably enable the breaking down of any number of its most important provisions, including those pertaining to individual liberties and human rights heretofore regarded as inviolate and guaranteed in plain English words commonly understood by ordinary laymen, untrained in the variously applied and sometimes unwarrantedly used rules of legal documentary construction, to have only one simple and commonly accepted meaning.

The majority opinion recognizes that sec. 11, art. 7, of the Oklahoma Constitution, uses the singular words "a", "the", and "he", in referring to the county judgeship and court thereby created, and I am unable to see how the use of such plain wording does not restrict our counties to a single such judgeship. One of the strictest and most elemental principles governing judicial interpretation of constitutional or statutory provisions is that their *evident* meaning *must be accepted.* See authorities cited in Jones v. Bayless, 208 Okla. 270, 255 P. 2d 506. If the wording thereof is plain, clear and unambiguous, there is no reason or justification for the use of interpretive devices to fabricate a different meaning. The words must stand as they are, until changed by appropriate repealing or amending processes. In this connection, I think it well to remember and emphasize a part of the opinion of this court in Dixon v. Shaw, 122 Okla. 211, 253 P. 500, 504, 50 A.L.R.

1232, quoted in the Nichols case, supra, as follows:

" * * * the language employed by the makers of the basic law of the state should not be given a strained or *subtle meaning, but such meaning as the average citizen would conclude the language imports*. This for the reason that *the electorate*, in ratifying the document and thereby breathing life into the same, *considered the provisions as the language used fairly imports*." (Emphasis ours.)

When the matter is properly analyzed, it will be seen that the real constitutional question presented herein, is not merely whether a county having a population of 300,000, or more, and obviously needing an additional official to aid its one county judge in discharging his official duties, may, under our Constitution, have more than one such judge, but rather: Whether the Constitution authorizes a or *any* county (irrespective of need) to have more than one county judge. If the Constitution does not mean what it obviously says, then it provides no limit to the number of county judges a county may have, and the Legislature may give it two *or more* such offices, regardless of need. The majority opinion has failed to point out any respect in which the Constitution is ambiguous on this subject, or to show wherein the plain wording of sec. 11, art. 7 thereof, is in conflict with any other constitutional provision. Accordingly, the matter, in my opinion, remains settled by that plain wording, as made crystal clear in Nichols v. Levy, supra.

I am authorized to announce that Mr. Justice CORN concurs in the views herein expressed.